Mort A. Segall, Plaintiff-Appellant, v. Lindsay-Schaub Newspapers, Inc., a Corporation, Defendant-Appellee.

Gen. No. 10,677.

Fourth District.

March 28, 1966.

Dyer, Richmond & Moore, of Hoopeston (Kenneth L. Richmond, of counsel), and D. S. Eagon, of Champaign, for appellant.

■■■■■■■■■■■■■■■■■■■■

Wheat, Hatch, Corazza & Baker, of Champaign (Harold A. Baker, of counsel), for appellee.

SMITH, J.

On motion, the trial court dismissed plaintiff's two-count suit for libel and entered a judgment in bar. In Count I, plaintiff charged that the matters published were untrue and libelous per se and the publication injured and damaged him in his profession as a lawyer. Count II alleges that the publications were maliciously made with the intent to harm and damage the plaintiff in his profession. Damages of $100,000, pleaded generally and not specially, are claimed in each count. From the judgment in bar, plaintiff appeals.

The published articles are centered around courtroom events relating to one Herbert Tinsley, a client or former client of the plaintiff as the case may be, and who was not a stranger to the halls of justice in Champaign County. The first publication on September 24 relates to Tinsley's appearance for arraignment on an indictment charging the illegal use of weapons. When asked by the judge if he had an attorney, Tinsley said he didn't know; that he had paid an attorney $492 to represent him in another matter in County Court and had signed a promissory note for $1,500. Tinsley said the attorney told him he had eight months in which to pay the note, but instead took judgment on the note within a few days. The judge commented that "I think you've paid him more than enough already," continued the case to the following Tuesday and indicated that if Tinsley desired he would appoint the attorney to serve without pay. Plaintiff was not mentioned by name in the article.

The next day, September 25, the defendant published an article stating that Tinsley was given one week to get another attorney, a continuance was granted, that Tinsley declined the offer of the judge to appoint his previous

211

attorney without pay, reiterated parts of the previous article and quoted Tinsley as saying "I wouldn't want an attorney to represent me who was mad at me." Plaintiff's name was not mentioned in the article.

On October 1, the third publication stated that Herbert Tinsley, who told the court he had paid a local attorney nearly $2,000 to represent him in a misdemeanor trial in county court, got à new attorney, the public defender, and then repeated a thumbnail sketch of the two previous publications.

On October 14, the fourth publication read in part as follows:

No New Trial.

Tinsley Case Set Friday

"Herbert Tinsley, 1406 W. Beech St., will learn at 9:30 a. m. Friday if his approximately $2,000 calculated risk is to pay off.

"Hearing on a motion for a new trial for Tinsley, convicted in County Court by a jury on charges of aggravated assault, was overruled Monday on the grounds that Tinsley's attorney in the case, Mort Segall, failed to put the motion in writing. . . ."

and then reiterated in part the contents of the first three articles.

On October 20, so far as material, the fifth publication stated:

". . . Interest in the case is centered around Tinsley's contention, made in Circuit Court, that he paid attorney Mort Segall nearly $2,000 to take the appeal from the justice court, where a fine of $75 had been entered. . . ."

■ In our judgment, the recent opinion of our Supreme Court at its November Term 1965, in the case of Robert Lulay, d/b/a Hausam's Market, Appellee v. Peoria Journal-Star, Inc., Appellant, Docket No. 39042M, effectively handcuffs the plaintiff in his suit. In that case the Supreme Court concluded that the publication in question was an accurate and capsulized summation of plaintiff's difficulties with the City of Peoria Health Department; that the publication was not libelous per se and that the trial court should have invoked the defense of privilege as a matter of law. In so doing, it states that "Section 611 of the Restatement of Torts definitely expresses the prevailing, if not unanimous weight of judicial authority. The right to report the activities of 'a municipal corporation or of a body empowered by law to perform a public duty is privileged, although it contains matter which is false and defamatory, if it is (a) accurate and complete or a fair abridgment of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed.' The privilege plainly includes the right to report the activities of such agencies as the Peoria Health Department." (Citing Authorities.)

■■ If the acts, declarations or records of agencies in the lower levels of government are privileged within the limitations thus stated, it seems almost perfunctory to assert that proceedings in open court in connection with a pending criminal case are likewise privileged. Lulay goes on to observe that the privilege thus afforded "can only be defeated by proving that a 'particular publication was motivated by actual malice' and that 'it would not be the ordinary case where the plaintiff could establish that a news report or discussion of governmental activities was only published because of actual malice.'" Even if portions of the publication are false (as the plaintiff alleges) and defamatory (a conclusion call-

ing for no inconsiderable imagination) Count I alleges no actual malice and is thus fatally defective.

Count II adopts the allegations of Count I and alleges that the "publications were made maliciously and with malice, and with intent to greatly harm and damage the plaintiff in his reputation as an attorney." No special damages are alleged. In both respects Count II is fatally defective. Where the publication is not libelous per se—and these weren't—a general allegation of damages is not sufficient and special damages must be alleged and proved. Lundstrom v. Winnebago Newspapers, Inc., 58 Ill App2d 33, 206 NE2d 525; Hambric v. Field Enterprises, Inc., 46 Ill App2d 355, 196 NE2d 489; Gogerty v. Covins, 5 Ill App2d 74, 124 NE2d 602.

From plaintiff's complaint it is clear that he does not complain that the events which took place and the statements reported did not happen in the courtroom. He explains in his complaint that Tinsley's statements were false and the judge's information thus incorrect. Thus, the proceedings were not falsely reported. The articles on their face do not suggest or remotely import malice nor can it be presumed. Judge v. Rockford Memorial Hospital, 17 Ill App2d 365, 150 NE2d 202. Where the published statements are neither libelous per se nor purport on their face to be motivated by actual malice, it would seem that the bare assertion of actual malice is insufficient. Where actual malice is the keystone of recovery in the publication of courtroom happenings and rests on extrinsic facts, it would seem that such a charge should not come into the courtroom naked, but should be clothed with factual allegations from which the actual malice might reasonably be said to exist. This is particularly true of courtroom events. The public is interested in them and this is as it should be. The news media should not operate in this area with a sword of Damocles hanging over its head and be subjected to a categorical

214

charge of malice where the contents of the publication are neither libelous per se nor on their face maliciously made. Where the malice is grounded on facts beyond the pale of the publication itself, those facts in capsule at least should be alleged. Count II falls far short of this standard.

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

TRAPP, P. J. and CRAVEN, J., concur.