Catherine H. Mitchell and Margaret Murphy, Known as Margaret M. Adams, Plaintiffs-Appellees, v. Peoria Journal-Star, Inc., a Corporation, Defendant-Appellant.

Gen. No. 66–19.

Third District.

November 7, 1966.

Rehearing denied December 9, 1966.

155

McConnell, Kennedy, McConnell & Morris, of Peoria, for appellant.

Kellstedt & Young, of Peoria, for appellees.

CORYN, P. J.

Plaintiffs, Catherine Mitchell and Margaret Adams Murphy, who are sisters, filed a complaint in the Circuit Court against The Peoria Journal-Star, Inc., a corporation engaged in the business of publishing a daily newspaper at Peoria, to recover damages for an alleged defamation, of and concerning them, arising from defendant's publication of the following article in the evening edition of its newspaper for June 22, 1962:

"Liquor Violators Fined by Default.

"Two women and a man charged with violation of the city liquor sales ordinances were found guilty by default this morning and were fined $50 each by Justice of the Peace Lester Gerber.

"Arrested in a Sunday morning raid at the Men's Social Club, 2406½ SW Adams St., were Margaret M. Adams, 1202 W. Smith St., Catherine H. Mitchell, of the same address, and James D. Murphy, 714 Spring St."

After alleging the publication of the foregoing article, the amended complaint averred that plaintiffs were engaged as partners in a tavern business known as the Shelly Tap, and that as a result of the defamation, the sales, income and receipts of said business were greatly reduced and that plaintiffs otherwise also sustained special pecuniary damage. The defendant admitted the publication of the article, denied that it was defamatory, and asserted the defense that the publication is true, and was published for justifiable ends under a qualified privilege to report judicial proceedings.

156

At the conclusion of the trial, the court instructed the jury, at the request of plaintiffs, that the publication complained of is libelous per se; that defendant is responsible for the acts of its employees; that compensatory damages are to compensate for financial injury; that punitive damages are an award made "to deter others from the commission of like offenses"; that if plaintiff is entitled to recover, punitive damages may be given as well as compensatory damages; and that the wealth of defendant may be considered in determining the amount of punitive damages. In addition, the trial court, at plaintiff's request, submitted the following special interrogatory:

"The jury is instructed, based upon the evidence on the whole case, to answer the following question of fact:

"1. Did the defendant make the defense of truth of the matter charged, the libelous per se publication, with malicious intent?"

The jury answered the special interrogatory affirmatively, returned verdicts in favor of the plaintiffs, awarding to each the sum of $4,000 for compensatory damages, and to each the sum of $12,500 for punitive damages. Defendant perfected an appeal from judgments entered on these verdicts and attempted to invoke the jurisdiction of the Supreme Court for a direct appeal on a constitutional issue. That court entered an order adjudicating that it has no jurisdiction for a direct appeal in this case and transferred the matter here.

In support of its alternative prayer for a reversal and judgment, or for a new trial, defendant argues that the judgments of the trial court abridge the guaranties of the First and Fourteenth Amendments to the Constitution of the United States, and of article II, § 4 of the Constitution of the State of Illinois; that the trial court

erred in giving certain instructions for plaintiffs and in refusing some for defendant, and in submitting the special interrogatory; that defendant's motions for a directed verdict at the close of plaintiffs' case, and at the close of all the evidence, and for judgment N. O. V. and notwithstanding the special interrogatory, were erroneously refused; that the judgments are contrary to the manifest weight of the evidence and to the law; and that plaintiffs were erroneously permitted to testify concerning a decrease in the gross receipts of their business.

In Whitby v. Associates Discount Corp., 59 Ill App2d 337, 207 NE2d 482, we had occasion to review the Illinois decisions on the law of defamation. Under earlier decisions a slander was actionable per se or per quod, depending upon:

1. Whether the utterance complained of, by the plain and ordinary meaning of the words used, without resort to innuendo, fell within four certain categories of imputations (i. e., imputations of crime, of loathsome disease, of unchastity to a woman, or affecting one's business, profession, office or calling), or

2. Whether it either (a) fell outside these categories, or (b) required a construction of the words, and resort to consideration of circumstances attending the utterance to demonstrate injurious meaning.

In instance (1) above, the slander was per se and no allegation or proof of special damage was required to sustain a recovery since at least nominal damages were presumed. In Instance (2) above, where the imputation was not within the four offensive categories, or where resort to innuendo was required to prove a defamation, the slander was per quod. To sustain a recovery for a per quod slander, it was necessary for the complainant to plead and prove special pecuniary damage, and where an offensive innuendo was claimed, to plead and prove

158

the inducement or the extrinsic facts attending the utterance and establishing the innuendo. A slander was never per se if the words complained of were capable of an innocent construction. A written defamation, however, or a libel, as opposed to slander, was always considered actionable per se irrespective of special harm or of what offensive imputations the words imported. The communication of defamatory words by a writing was considered a special harm sufficient to sustain a recovery of at least nominal damages.

■ While the foregoing distinctions between libel and slander are still accepted as the rule by the American Law Institute, at Restatement of the Law, Torts, Vol III, § 569, and by a minority of American jurisdictions, (see Prosser, Law of Torts, 2d ed 1955, at 587, cf. Prosser, More Libel Per Quod, 79 Harv Law Rev 1629), and while one or more of us might be inclined to accept those distinctions as the better rule, we concluded in Whitby, supra, that Illinois law, by evolvement, had abolished all distinctions between slander and libel except as to whether the defamation was oral or written. We also concluded that the rules applicable to slander are now applicable to libel as well. Cf. Prosser, More Libel Per Quod, 79 Harv Law Rev 1629; but see, Eldridge, The Spurious Rule of Libel Per Quod, 79 Harv Law Rev 733 and 33 ILP, Slander and Libel, § 21. In Hudson v. Slack Furniture Co., 318 Ill App 15, 47 NE2d 502, for example, it was held that the publication of a mere wage assignment could not be considered libelous per se where such words do not prejudice a party in his profession or trade. In Parmalee v. Hearst Pub. Co., Inc., 341 Ill App 339, 93 NE2d 512, as another example, it was held that an offensive publication was not libelous per se because it did not impute a crime, or tend to harm plaintiff in his profession or occupation. Both decisions indicated that libel is to be treated like

slander in the sense that, except for certain categories of imputations, a defamation is not actionable without proof of special damage. Other Illinois decisions, although not expressly equating slander and libel so far as narrow categories of imputation are concerned, admitted to a distinction between libel per se and libel per quod. White v. Bourquin, 204 Ill App 83. The recognition of this distinction abrogated the presumption that special damages always attends a written defamation. As noted by Prosser, Law of Torts (2d ed 1955) at 588, the fact that libel has come to be treated as slander, in the sense that the harmful import of the words must relate to certain categories of imputations to be actionable per se, resulted originally from some confusion about the dual meanings of per se, but in later cases, has represented a deliberate retreat from the rigors of former rules of libel. In the interests of protecting freedom of expression, the requirements of actionable libel have been conformed in Illinois, in our judgment, to the stricter requirements of actionable slander. This is to say only that damages are no longer always presumed from the mere fact of a writing, but that where actual harm is shown to have been caused, the publisher will be held responsible for an abuse of the right of free expression.

▮ ▮ In the case at bar, the publication charges plaintiffs with the commission of a criminal offense, but the offense charged is that of violating a municipal liquor ordinance for which a fine was imposed for $50. In order to be actionable as a per se libel, for imputing a criminal offense, the defection charged must be an indictable one, involving moral turpitude and punishable by death or by imprisonment otherwise than in lieu of fine. Restatement of the Law, Torts, Vol III, § 571. The publication here is not libelous per se as imputing the commission of a criminal offense, since the violation of a local liquor ordinance does not involve an indictable offense nor one

160

punishable by death or imprisonment otherwise than in lieu of fine. We conclude, therefore, that the trial court erred in instructing the jury that the publication complained of here is libelous per se, and that it repeated this error by submitting the special interrogatory to the jury.

■ ■ Notwithstanding that plaintiffs submitted instructions that the article here is libelous per se, and that were erroneously given, we conclude that the amended complaint does set out a cause of action for a per quod libel. Words charging an arrest for a liquor violation are, without resort to innuendo, hurtful by their plain and ordinary meaning, even though they may not import an offense within the categories of a per se libel. Where special damages have been sustained by a wrongful publication of such injurious words, as is alleged to be the fact here, then the utterance is actionable. But the "gist" or "sting," i. e., the hurtfulness of the utterance, of the per quod libel which plaintiffs have pleaded, arises only from the report of the fact of an arrest for a liquor violation. Although plaintiffs have urged, with considerable emphasis, that they are injured by the false suggestion of the article that the arrest took place at the Men's Social Club, and that this charge is a part of the defamation, no inducement showing an offensive innuendo regarding the place of arrest is pleaded. The words "Men's Social Club" are not offensive on their face, and no facts are alleged in the complaint which suggest it to be an unsavory location. Accordingly, these words regarding the place of arrest do not comprise any part of the pleaded defamation, and the evidence would not support a finding that plaintiffs were libeled by this part of the newspaper report. The only offensive innuendo which the complaint suggests is that plaintiffs, who are persons engaged in the liquor business, because of the publication, were accused of conduct incompatible with the lawful exercise of that business. The defense set up against the

pleaded libel is that the publication is not defamatory, because it does not reasonably support that innuendo, and that the fact of arrest, reported in the article, is true and was published for justifiable ends.

The evidence is uncontradicted that plaintiffs were in fact arrested on a Sunday morning, with James D. Murphy, the husband of Margaret Adams Murphy, on a charge of violating a municipal liquor ordinance, and that they were subsequently found guilty by default, and were fined $50 each by Justice of the Peace Lester Gerber. The evidence also shows, however, without contradiction, that the arrest took place at the Shelly Tap, and not at the Men's Social Club, as reported in defendant's newspaper. It is argued that to establish the plea of truth, the proof must be as broad and as narrow as the defamatory imputation itself, and that the proof here shows that the arrest did not occur at the place reported. As noted in Prosser, On Torts, (2d ed 1955) at 631, the requirements of the defense of truth were formerly carried to ridiculous extremes, but in modern times, it has not been required that the literal truth of even inoffensive details be established. Rather, it is sufficient to show that the gist or sting of the defamatory imputation is true. Prosser, On Torts, (2d ed 1955) at 632. The discrepancy as to the place of arrest did not arise in the judicial proceeding which defendant reported, but only in defendant's newspaper report of it. However, the publication is accurate with respect to the fact of the arrest of plaintiffs, and this is the "gist" of the defamation pleaded and proved by plaintiffs. Watson v. Herald-Despatch Co., 221 Ill App 557; Wilson v. United Press Ass'ns, 343 Ill App 238, 98 NE2d 391. Plaintiff's complaint did not allege any inducement showing that the false use of the words "Men's Social Club" connoted some meaning that was libelous, and there is no evidence in the record to establish a libelous meaning for these words.

162

We also conclude, from the state of the record herein, that the publication of the fact of plaintiffs' arrest for violation of the liquor ordinance was made for justifiable ends under a right of the press to report a judicial proceeding. Lulay v. Peoria Journal-Star, Inc., 34 Ill2d 112, 214 NE2d 746. Further, the record does not sustain the conclusion that this news report of the activity of a governmental agency was motivated solely by malice. The finding of the jury that the defense of truth was maliciously asserted, rested for its validity upon the erroneous interrogatory and instruction given by the court instructing the jury that the article was per se libelous. By this opinion we are not condoning inaccurate reporting, but rather, we are holding that to recover for such inaccurate reporting on a per quod libel theory that there must be both allegations (the inducement) and proof of the damaging nature of alleged defamatory material in the inaccurate report, unless the "gist" or "sting" of the defamatory material is obvious.

■ In view of our conclusion that the defenses of truth and publication for justifiable purpose under a qualified privilege to report judicial proceedings was established by the record, as a matter of law, it is not appropriate that the cause be remanded for a new trial because of the error in instructions. It is also unnecessary that we should decide the other issues urged as error by defendant. The judgment of the Circuit Court accordingly is reversed.

Reversed without remand.

ALLOY and STOUDER, JJ., concur.