Ned Grabavoy, Plaintiff-Appellant, v. William Wilson and William M. Johnson, d/b/a The Spectator, Defendants-Appellees.

Gen. No. 67–4.

Third District.

October 18, 1967.

John T. McGrath, of Chicago, for appellant.

Galowich & Galowich, of Joliet, and Moriarty, Rose & Faccenda, of Chicago, for appellees.

ALLOY, J.

The cause before us originated as an action by Ned Grabavoy as plaintiff-appellant as against William Wilson alleging that he maliciously libeled Grabavoy by issuing a false statement to the press that Grabavoy was indebted for tax liens in excess of $64,000 by means of displaying a document prepared by Chicago Title and Trust Co. which set forth existing unreleased liens shown of record in the Will County Recorder's Office. In another count of the same complaint, it was alleged that defendant William M. Johnson, as publisher of The Spectator newspaper maliciously libeled Grabavoy by publishing a story and accompanying editorial based on the statement as to delinquent taxes. Motions to dismiss the counts were filed on behalf of defendants and the trial court entered orders dismissing both counts of the complaint filed on behalf of both defendants. The fundamental issue raised on appeal is whether the complaint states a cause of action for libel as against either defendant.

In Count I of the complaint, plaintiff alleges that he was elected as a councilman of Joliet and was also a businessman in operation of ten retail bakery goods stores in Joliet and surrounding areas. He alleges that during the period of approximately five years from October 1960 to October 1965, certain tax liens were filed against his business operation and that during the same period most of said tax liens had been paid and released al-

though through "inadvertence" said releases were not shown of record. The pleadings show that the "inadvertence" consisted of the neglect of plaintiff to have the releases filed as a matter of public record.

The pleadings further disclose that on December 21, 1965, defendant William Wilson, who was also a Joliet councilman, and plaintiff were at a council meeting and that following the meeting the defendant delivered to The Spectator newspaper copies of a certain report of Chicago Title and Trust Co. which set forth a record of liens filed as against plaintiff Grabavoy. The report was obtained without knowledge of plaintiff and the name of the person to whom the title company issued the report was purposely blocked out. It was alleged in the complaint that defendant Wilson knew that plaintiff's reputation in the community was excellent and that the issuance and publication of the statement and report would defame plaintiff's reputation, both in business and as a public officeholder, and would cause financial loss to plaintiff in the operation of his business. It is asserted that notwithstanding such knowledge, defendant Wilson maliciously issued the statement and report without making any effort to ascertain its accuracy or correctness. It was then alleged generally that plaintiff was damaged in his reputation in the community and as a public official and that he suffered loss of business profits and that such business was in lesser amount and its profits lower following the issuance of said information.

In the second count of the complaint, the introductory facts were realleged and defendant William M. Johnson, the publisher of the newspaper was alleged to have circulated in the Joliet area on page 1 of his newspaper, information to the effect that defendant Wilson passed out photostats to the press of a report of the Chicago Title and Trust Co. listing "some 28 tax liens against Ned Grabavoy, Southern Fried Donut or West Side

Bakery, totaling $64,681.81." In the same issue of the newspaper, defendant Johnson printed the following editorial on page 4 thereof:

> "KITCHEN HEAT
>
> "Harry S. Truman, who was once more or less well known in political circles, once made the statement, 'If you can't stand the heat, get out of the kitchen.'
>
> "And the heat was on this week as City Councilmen Norman Keck and William Wilson questioned the right of Councilman Ned Grabavoy to deliberate on the dispensing of public tax money when Grabavoy was reported by Keck and Wilson as failing to pay a huge amount of his own taxes.
>
> "While Councilman Grabavoy gave a few cries of anguish and accused his former running-mate, Keck, of being somewhat less than loyal, Grabavoy set the fire under his own chair in the last city election when he accused Ralph Smith and William Wilson of practically everything short of outright theft of the door knobs off the city hall.
>
> "If he guessed that Wilson and Smith . . . and Keck . . . would forgive and forget, he couldn't have been more wrong. And when these men documented Grabavoy's reported failure to pay some $64,000 in state, federal and local taxes, he could be sure this matter would be made public.
>
> "There are quite possibly mitigating circumstances. It is quite easy for a businessman to suffer reverses. Certainly Grabavoy must be in business difficulty if he has failed to pay nearly 30 separate tax liens stretching from Oct. 17, 1960 to Oct. 14, 1965.
>
> "But under most circumstances it would seem that a businessman in such a position would seek to put

all of his time into getting his business problems cleared up . . . simply by increasing his income and paying off his taxes. It is not clear how Grabavoy figured to straighten his bakery business problems while diverting days and weeks of his time to city problems on the token salary of $1,000 per year. On the contrary it would appear from the tax record produced by Councilman Wilson, that Grabavoy's tax situation is getting progressively worse with each passing month.

"Aside from the obvious political implications, it would seem that Keck and Wilson have a point in insisting that any elected official pay his taxes in full, particularly when those taxes help pay his own salary and help run the City of Joliet.

"Personally, Ned Grabavoy has always appeared to us over the years as a good father, family man and civic-minded citizen. It would seem that while that image is still reasonably intact that his best move would be to step down from the Council, clear up his business and tax problems, and then return at a later date with a clean slate."

The complaint of plaintiff further alleges that the statements in said story were untrue and that the publication was maliciously designed to represent plaintiff as a tax evader, and further alleged that as a direct result of the publication, plaintiff was damaged in his reputation in the community and as a public official and suffered loss of business and business profits by reason of reduction in business following said publication.

The record shows that on December 21, 1965, during a regular meeting of the Joliet City Council, defendant Wilson and other city councilmen questioned the right of plaintiff Grabavoy to sit on the City Council when he was indebted to the city for delinquent taxes. Plaintiff

acknowledges that the report of Chicago Title and Trust Co. accurately reflected the numbers of liens filed and the amount of the liens. Plaintiff Grabavoy asserts that he had in fact paid off some of the liens and was only indebted at the time of the newspaper publication in the sum of $16,000 for various tax liens and that plaintiff had "inadvertently" neglected to have released the other liens as a matter of public record.

The trial court in determining the motions to strike and dismiss the complaint filed by defendants pointed out that both defendant Wilson and plaintiff Grabavoy, as fellow members of the City Council, were public officeholders and their actions were subject to fair comment by any citizen or by any newspaper. The trial court also noted that there is no statutory provision or other precedent which imposes an obligation on anyone to make inquiry as to whether or not the liens referred to have been paid, but that the law provides the manner in which this notice to the world of the release of liens may be shown by filing the releases of record. The court observed that on the basis of the record it was admitted that plaintiff did not file his releases and, by his own failure, he permitted the record to indicate that he was indebted for all of the taxes referred to. The court thereby concluded that there was no duty on the part of either of the defendants to inquire of plaintiff as to whether or not he owed the money and that neither of the defendants exceeded the bounds of "fair comment" or made any false statement as to liens of record.

The court also pointed out that under the Ill Rev Stats, c 24, article 3-4-15 (at 2) it is provided:

> "No person shall be eligible to the office of alderman: (2) if he is in arrears in the payment of any tax or other indebtedness due to the city;"

The court observed that indebtedness of taxes to the city by a public official is a matter of public interest

and that comment thereon is a privilege protected by the First and Fourteenth Amendments to the Constitution of the United States. The court thereupon dismissed the complaint as to both defendants.

On appeal in this court, it is the contention of plaintiff that the motion to dismiss filed by both defendants admits publication, falsity and malice; that the question of truth of an alleged libel is for the trier of fact; that fair comment and criticism cannot be predicated on unfair or false statements of fact and under the circumstances the charges required investigation; that the charges were libelous per se and that the complaint alleged special damage.

While the major portion of what we have to say will apply to the defendant Johnson and the publication in the newspaper, the same basic principles will likewise apply to the motion to dismiss filed by defendant William Wilson. A motion to dismiss admits only facts which are well pleaded but does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which the conclusions are based (Pierce v. Carpentier, 20 Ill2d 526, 531, 169 NE 2d 747). The complaint discloses that the Chicago Title and Trust Co. report listing the various liens was not false but simply asserted that Grabavoy had paid a substantial part of the indebtedness and had failed to file releases as heretofore indicated. So far as the public records are concerned, the report is accurate and the assertion that the news item was false was not supported by any specific facts in the complaint so that the motion to dismiss did not admit the conclusions as to falsity (Washington v. Courtesy Motor Sales, Inc., 48 Ill App2d 380, 199 NE2d 263; Nechanicky v. Morgan Park Federal Savings & Loan Ass'n of Cicero, 32 Ill App2d 444, 178 NE2d 197).

Similarly, there is no admission by the motions to dismiss of malice since there were no facts alleged from which malice could be implied or presumed. The simple allegation that the publication was made with malice does not operate as an admission of malice when tested by the motion to dismiss (Wade v. Sterling Gazette Co., 56 Ill App2d 101, 205 NE2d 44).

On the record, there is no factual issue as to the report of Chicago Title and Trust Co. in the case before us. Consequently, there is no issue for a trier of fact, since the complaint indicates that the recorded information as to liens was correctly disclosed in the case before us. The complaint indicates that the report of Chicago Title and Trust Co. was correct and even that there was, in fact, still a remaining indebtedness after the payments made by plaintiff for which he neglected to file releases of lien, in the sum of $16,000. The existence of the indebtedness itself would constitute a challenge to the right of plaintiff to sit in the City Council in Joliet under the provisions of the statute (1965 Ill Rev Stats, c 24, § 3–4–15, § 3–14–1 and § 5–2–10). Under the precedent of Ogren v. Rockford Star Printing Co., 288 Ill 405, 123 NE 587, and other similar cases, the publication of accurate information would constitute an absolute defense to the charge of libel.

In the cause before us, also, the publication which was made by the newspaper was not based upon any unfair or false statements of fact. As indicated in the case of Ogren v. Rockford Star Printing Co., supra, at page 417:

> "When anyone becomes a candidate for public office, conferred by the election of the people, he is considered as putting his character in issue, so far as it may respect his fitness and qualifications for office, and everyone may freely comment on his

conduct and actions. His acts may be canvassed and his conduct boldly censured."

The publication complained of did not contain matters which were libelous per se. As we had indicated in Whitby v. Associates Discount Corp., 59 Ill App2d 337, at 340, 207 NE2d 482, words which give rise to a cause of action for a slander "if falsely communicated" include those imputing inability to perform or want of integrity in the discharge of duties of office or employment and those prejudicing a particular party in his profession or trade. The same rules are applicable to libel as in the cases of slander (Mitchell v. Peoria Journal-Star, Inc., 76 Ill App2d 154, at 159, 221 NE2d 516).

The publisher of the newspaper was not required to exhaustively investigate each news item. In the case before us, such investigation (unless a direct inquiry was made of plaintiff) would not have been of any value. As stated in John v. Tribune Co., 24 Ill2d 437, at 442, 181 NE2d 105, where the language in an article published is read as a whole and the words are given in their natural and obvious meaning, such words, allegedly libelous, that are capable of being read innocently must be so read and declared nonactionable as a matter of law. This innocent construction rule has been approved and underscored in other Illinois cases (Hambric v. Field Enterprises, 46 Ill App2d 355, 358, 196 NE 2d 489; and cases cited). Under the "innocent construction rule" since there was no knowledge of the release of liens the complaint also failed to state a cause of action.

The most significant recent case in the field of libel is New York Times v. Sullivan, 376 US 254, 11 L Ed2d 686, 84 S Ct 710, in which the Supreme Court of the United States reversed without remandment a judgment for $500,000 rendered against the New York Times for a publication of an advertisement which contained 10 or

15 misstatements of fact. The court so concluded, even though the evidence disclosed that the Times had in its own files information which would show the falsity of the allegations in the advertisement and had failed to search its own file. The court stated (11 L Ed2d 706) that a rule which would place the burden of proving the defense of truth on defendant does not mean that only false speech would be deterred. It was pointed out that even the court's accepting this defense as an adequate safeguard would have recognized the difficulties of adducing legal proofs that the alleged libel was true in all of its factual particulars. The court stated "under such a rule, would be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which 'steer far wider of the unlawful zone' . . . The rule thus dampens the vigor and limits the variety of public debate. It is inconsistent with the First and Fourteenth Amendments."

The New York Times case clearly established the right of a publisher to comment on the acts of a public official. The court emphasized that "the interests of the public here outweighs the interest of the . . . individual . . . Importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to reputation of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from publicity is so great, and the chance of injury to private character so small, that such discussion must be privileged. The Supreme Court concluded that "the constitutional guarantees require . . . a federal rule that prohibits a public official from recovering damages for a

defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." The Illinois courts have reiterated this principle (Proesel v. Myers Pub. Co., 48 Ill App2d 402, 199 NE2d 73; Lundstrom v. Winnebago Newspaper, Inc., 58 Ill App 33, 206 NE2d 525).

 While many of the observations which we have made apply not only to defendant Johnson, as publisher, but also to the motion to dismiss of defendant Wilson, we note that all that was specifically alleged was that Wilson delivered the Chicago Title and Trust Co. report which, as we have indicated, was an accurate report of the record as to liens. There was nothing in the action of Wilson, as indicated by the precedents cited in the course of this opinion and as is clear from the facts which, on the record made in this cause, would justify the maintenance of plaintiff's action against him. The lien report was not libelous per se and no special damages were alleged with particularity so as to justify the maintenance of the action. In Hambric v. Field Enterprises, 46 Ill App2d 355, 357, 196 NE2d 489, the court held that allegations (of the plaintiff's good name, reputation and business were damaged and that respectable clientele to the business were driven away) were descriptive of general damages only and that special damages must be alleged with particularity. To the same effect is Segall v. Lindsay-Schaub Newspapers, 68 Ill App2d 209, at 214, 215 NE2d 295.

We must, therefore, conclude that the action of the trial court in dismissing the complaint as to both defendants William Wilson and William M. Johnson, d/b/a The Spectator, was proper and should be affirmed.

Affirmed.

CORYN, J., concurs.

SPECIAL CONCURRING OPINION

STOUDER, P. J.

I concur in the result reached in the foregoing opinion but not entirely with the reasoning employed therein.

I especially disagree with the heavy reliance upon New York Times v. Sullivan, 376 US 254, 11 L Ed2d 686, 84 S Ct 710, as support for the implied proposition that the freedom of the press to comment on public affairs and about public personages can only be achieved, protected or promoted without regard to responsibility for such comments. To me there can be no freedom without responsibility. The New York Times case does not stand for this proposition. That opinion was written in the light of the exigencies of the social ills of our times and much of the opinion as expressed must be considered dicta. The Court in the Times case concluded that there was nothing in the advertisement nor in the evidence offered at the trial from which it could be reasonably inferred that the advertisement referred to the Plaintiff.

Similarly, in the instant case, the opinion can be predicated upon the factual circumstance that it was Plaintiff's own conduct which resulted in the false information in the editorial. In basing the majority opinion on the malice or lack thereof, of Defendant, it goes much further than is necessary.