2 Ill. App.3d 1090 (1971)
278 N.E.2d 437
BERNARD M. KAPLAN, Plaintiff-Appellant,
v.
THE GREATER NILES TOWN SHIP PUBLISHING CORPORATION et al., Defendants-Appellees.
No. 53996.
Illinois Appellate Court  First District.
November 24, 1971.
Ruben, Kaplan & Lasky, of Chicago, (Bernard M. Kaplan, of counsel,) for appellant.
Sherwin Willens, of Chicago, for appellees.
Judgment affirmed.
Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:
*1091 Plaintiff brought an action to recover damages from defendants for alleged defamatory and libelous statements written by defendant Roland R. Moore, Jr., and published by defendant The Greater Niles Township Publishing Corporation. Defendants' motion for judgment on the pleading was granted, and plaintiff has appealed.
All facts before us must be taken from the pleadings. For four years, commencing in April, 1965, plaintiff was a member of the Board of Trustees of the Village of Skokie. Defendant Publishing Corporation is the publisher of "The News," a suburban weekly newspaper of general circulation in Skokie, Niles, Morton Grove, Lincolnwood and Golf. Defendant Moore is the President of the Publishing Corporation and the Editor-Publisher of "The News."
When plaintiff took office as a Trustee in 1965, a Village of Skokie ordinance, adopted in 1961, fixed the salaries of Village Trustees at $25 per meeting attended, not to exceed more than one meeting per week. By reason of Article 9, Section 11 of the Illinois Constitution of 1870, as implemented by Ill. Rev. Stat. 1963, ch. 24, par. 3-13-1, the rate of compensation for trustees could not be increased or diminished so as to take effect during the term for which elected. In August of 1965, the statute (Ill. Rev. Stat. 1965, ch. 24, par. 3-13-7) was amended to permit a village with a population of 60,000 or more to adopt an appropriate ordinance to fix the compensation of its trustees at not to exceed $35 per trustee for attendance at one meeting a week. In December of 1966, the Skokie Board unanimously fixed the rate of compensation at $35 per meeting, effective April 15, 1969, but this rate was not applicable to plaintiff.
In 1967, Section 3-13-7 of the statute was again amended, permitting compensation for one weekly meeting in an amount not to exceed $75 plus $25 per month expenses, though again this change was not applicable to plaintiff. On March 11, 1968, plaintiff proposed and the Board of Trustees adopted a resolution directing Skokie's Corporation Counsel to draft an ordinance raising the regular meeting stipend of trustees to the maximum figure allowed by this amended enabling legislation, the ordinance to become effective April 15, 1969. In proposing the ordinance, plaintiff pointed out that it would not apply to the current terms of the then members of the Board. On March 25, 1968, a first reading of the proposed ordinance was had.
On March 28, Moore wrote an editorial which was printed on the first page of The News. Entitled, "Greedy Trustees," it stated in part:
"Skokie trustees are on the verge of voting themselves a 300 per cent increase in salary, plus a never-before-heard-of expense account.
* * *

*1092 Next Monday the trustees are expected to approve an ordinance increasing their salaries to $75 per meeting, plus a $25 monthly expensive account."
On April 1, at the regular weekly meeting of the Board of Trustees, plaintiff responded to a question relating to the editorial and the proposed ordinance by saying (as recorded verbatim in the minutes of the Board):
"I think your point is well taken, and think this editorial is misleading, is unfair, and does not tell the truth. It leaves the impression that this Board in passing this ordinance is increasing its own salary.
* * *
Now whether or not elected officials should or should not be paid I suppose is a matter of philosophy. I personally think it demeans a community and it demeans the office to ask dedicated men who are serving, and this doesn't relate to myself at all, to ask dedicated men who are willing to give the public their time and effort. I have done it on the School Board, I have done it for the Village, and the salary I get here is not a factor. It demeans the community to ask them * * * it demeans the office. The editor of this paper who wrote this article doesn't give free advertising. The average member of this Board spends twenty hours a week, and speaking for myself I can use that twenty hours in my law practice, I can use that twenty hours with my family. I need this responsibility like a hole in the head except for my duty as a citizen, and if the average member of the public has that little credence and that little faith in their public officials, an honest Board. We didn't come into office, no member of this Board came into office for low pay to take money on the side or hold their hands out. This is true of every public official in our professional philosophy. What this Board does is besides the point. But if you want honest government, if you want dedicated government, doggone it, be prepared to pay for it, and don't give me this business of a dollar a year. That's hypocrisy." (Emphasis supplied.)
Mrs. Jean Doney, a part-time reporter and columnist for defendants, was present at the meeting when the above remarks were made. On April 4, 1968, The News carried another front page editorial by Moore which contained the alleged libelous language and reads in its entirety as follows:

"Our Thoughts

FOR SALE
Skokie's Village fathers postponed for a week any action on a pay raise  from $25 to $75 weekly  for the six trustees. The ordinance *1093 read a week ago was slightly amended, Corp. Counsel Harvey Schwartz said, forcing the delay.
Last Monday, though, several residents appeared at the board meeting to express their concern and disapproval of the proposal, many leaving early when word was passed no action would be taken.
Two housewives did speak out against the move, and Trustee Kaplan felt called upon to set the record straight.
"This is not a self-serving move, it will not directly affect this board because the higher salaries won't become effective until after the next elections." Then he added:
"If you want honest, dedicated public servants, be prepared to pay for it."
That is an interesting statement coming from the trustee who, a few months ago, publicly attacked the integrity of his fellow board members and who, to the best of our knowledge, has never publicly acknowledged he was wrong.
Mr. Kaplan's words of this week are a further indictment of his fellow trustees as well as of all men and women who serve their communities in, for the most part, no-pay elective and appointive posts.
Mr. Kaplan has said in effect that unless a trustee's salary is raised to $75 weekly, he will find it impossible to remain "honest and dedicated" and won't be a candidate for re-election.[1]
It is well Skokians learn these facts. Honesty and dedication have been generally accepted as "not for sale" attributes. We thank Mr. Kaplan for his clarification. We are shocked to learn the sales price is so low."
Plaintiff's position is that the editorial entitled, "For Sale," goes beyond the purview of permissible fair comment, is not a fair abridgment of his remarks, and falsely and maliciously imputes to him comments he did not make. Particularly, as paraphrased in his amended complaint, plaintiff alleges that the editorial libeled him by falsely attributing to him the following remarks:
"* * * that `he' will find it impossible to remain honest and dedicated unless a trustee's salary is raised to $75.00 weekly, and that plaintiff's honesty and dedication is `for sale.'"
Plaintiff further contends that the editorial is not reasonably capable of innocent construction and is libelous per se, as it was maliciously intended to impugn his reputation and to hold him up to public contempt. *1094 Plaintiff requested from each defendant $1 as compensatory damages and $1,000,000 as exemplary or punitive damages.
 1, 2 The first question presented, which we deem determinative, is whether the editorial, "For Sale," is capable of innocent construction, and is thus rendered nonactionable without further consideration. (Coursey v. Greater Niles Twp. Pub. Corp., 82 Ill. App.2d 76, 82, affirmed 40 Ill.2d 257.) In John v. Tribune Company, 24 Ill.2d 437, 442, the court enunciated the doctrine of innocent construction:
"That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."
See also Grabavoy v. Wilson, 87 Ill. App.2d 193, 202, and cases there cited.
The interpretation of the editorial urged by plaintiff is that an innocent reading is implausible, and that a proper construction of the language brings it within the scope of libel per se (in this case, words prejudicially imputing inability to perform, or want of integrity in the discharge of, the duties of his office or of his profession). We consider such a construction of the words to be unnecessary, and the point, therefore, untenable.
Furthermore, we think that the editorial language is properly interpreted as fair comment on a reasonable paraphrase of plaintiff's argument that good government must be paid for, which he carried to an unfortunate extreme by inferentially positing the alternative of trustees' accepting "money on the side."
We note, additionally, the general policy consideration applicable to cases of this nature, as set out in New York Times Co. v. Sullivan, 376 U.S. 254, 270:
"Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."
Defendant's motion for judgment on the pleadings was therefore properly granted, and the judgment is affirmed.
Judgment affirmed.
DRUCKER and LORENZ, JJ., concur.
NOTES
[1] Subsequently, the ordinance was unanimously adopted and took effect April 15, 1969. Plaintiff did not stand for re-election.