FREDERICK ROEMER, Plaintiff-Appellee, *v.* ZURICH INSURANCE COMPANY *et al.,* Defendants-Appellees.

(No. 59930;

First District (1st Division)—January 20, 1975.

Chester A. Lizak, of Chicago, for appellant.

David P. List, William O. Fifield, and Nathan P. Eimer, all of Sidley & Austin, of Chicago, for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Frederick Roemer (plaintiff) brought this action for damages against his employer, Zurich Insurance Company (Zurich), Allison Henry (Henry), a supervisor for the employer and a secretary and coworker of plaintiff Patricia Thomas (Thomas). The record before us commences with plaintiff's third amended complaint at law (complaint) consisting of five counts. The three defendants filed a motion to strike Counts I, III and IV in their entirety; or, alternatively, to strike the pertinent portions of these counts. After a hearing, the trial court granted defendants' motion to strike these three counts with prejudice, finding that there was no just reason to delay enforcement of, or appeal from, the order. Plaintiff has appealed.

Count I of the complaint seeking damages from Zurich, alleges that in January of 1971, plaintiff was hired by Zurich to work in its personnel department. Plaintiff duly performed all of his duties until he was discharged on March 12, 1973. Plaintiff received a number of pay raises and was promoted to employment manager and "during such period acquired certain rights in such corporation, including participation in the profit sharing plan and group insurance offered by such corporation." Defendant Henry was the immediate supervisor of plaintiff and defendant Thomas was employed under plaintiff's direct supervision. Both of them had due notice and knowledge of the contract of employment between plaintiff and Zurich.

Count I further alleges that on March 12, 1973, plaintiff was advised by Henry that Thomas had accused plaintiff of making sexual advances toward her and that these accusations were untrue. On March 12, 1973, plaintiff was summarily discharged without just cause, a hearing and the right to confront his accuser.

Count III, seeking damages from defendant Thomas, incorporates the paragraph first above set forth pertaining to the allegations of Count I. Count III also alleges that plaintiff had been reputed, esteemed and accepted by and among his neighbors and professional associates, to whom he was known to be a person of good repute and chaste character. Plaintiff had never previously been suspected of being guilty of unchaste

and unprofessional conduct. On March 9, 1973, defendant Thomas "did falsely, maliciously and intentionally advise" defendant Henry that she was forced to quit Zurich because plaintiff was making "sexual advances" toward her. It is further alleged that by this statement defendant Thomas imputed that plaintiff was of unchaste and immoral character and was unfit, unqualified and lacking in professional integrity to be employment manager at Zurich.

Count III proceeds to allege that by reason of these defamatory statements, plaintiff has suffered, and will continue to suffer, substantial damages such as loss of employment and salary, loss of future employment opportunities, great mental pain, distress of mind and humiliation, and his reputation for professional integrity and virtue has been brought into question. For many years plaintiff will be confronted with the facts of his discharge where he seeks other employment and will be forced to tell other and future employers to whom he might make application for work that he was once discharged as above set forth. All of this has caused, and in the future will cause, plaintiff to suffer great mental agony, distress of mind and humiliation.

Count IV, seeking damages from defendants Zurich and Henry, also incorporates the initial paragraph above set forth regarding Count I. It alleges that on March 12, 1973, plaintiff was advised by defendant Henry that defendant Thomas had accused him of making sexual advances toward her. On March 12, 1973, plaintiff was summarily discharged. Plaintiff registered with certain placement agencies in an attempt to secure new employment. It alleges further that on March 19, 1973, defendant Henry, both individually and in his supervisory capacity for Zurich, "did wrongfully, willfully and maliciously respond to an inquiry" from a placement agency asking him to rate plaintiff's work performance by stating, "That's self-explanatory. He is no longer here."

In addition, County IV alleges that on March 20, 1973, defendant Henry, in like capacity, "wrongfully, willfully and maliciously responded to an inquiry" from another placement agency asking him to rate plaintiff's work performance by stating, "I would not want him working for me." Both of these replies falsely impute that plaintiff was an incompetent and unqualified employee. Both replies were made "with express malice, with knowledge that such replies falsely imputed that plaintiff was an incompetent and unqualified employee, and with design and intent to injure Plaintiff and his good name, reputation and his ability to secure employment." Plaintiff also alleges that by reason of the above he has suffered, and will continue to suffer, substantial damages much as alleged in Count III.

In this court, plaintiff contends that an employee at will, who par-

ticipates in the profit-sharing and group-insurance plans of his employer, may not be discharged without cause; the complaint is sufficient at law as regards the accusation of sexual advances because such accusation was made with malice and resulted in special damages to the plaintiff and a false statement by an employer imputing incompetency to an employee is actionable if maliciously made and resulting in special damages. Defendants urge that plaintiff's employment with Zurich was terminable at will without cause by either party so that his discharge is nonactionable as a matter of law; the alleged slanderous statements made by defendant Thomas against plaintiff are capable of innocent construction and therefore they must be so construed and declared nonactionable as a matter of law and the responses made by defendant Henry to inquiries from prospective employers of plaintiff were privileged.

■■ The legal sufficiency of these counts of the complaint must be considered and determined with certain basic principles in mind. The properly pleaded allegations are admitted by the motion of defendants to dismiss. (*Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 963, 282 N.E.2d 452, *appeal denied*, 52 Ill.2d 594, and cases therein cited.) However, although well-pleaded facts must be taken as true, conclusions are not admitted and need not be accepted. (*Chicago Teachers Union v. Board of Education*, 14 Ill.App.3d 154, 156, 301 N.E.2d 833.) As this court has held, the motion to dismiss "does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which the conclusions are based * * *." *Delis v. Sepsis*, 9 Ill.App.3d 217, 222, 292 N.E.2d 138.

■■ Analysis of Count I reveals that it alleges no specified time or duration for the employment of plaintiff by Zurich. No copy of any written contract between these parties is appended to the complaint or described therein. The complaint merely alleges that plaintiff "was hired by defendant, ZURICH." We must therefore assume that the legal relation between the parties was an employment at will. The arrangement between plaintiff and Zurich was subject to termination by either of them at will, for or without cause. (*Buian v. J. L. Jacobs & Co.* (7th cir. 1970), 428 F.2d 531, 533, citing *Atwood v. Curtiss Candy Company*, 22 Ill.App.2d 369, 161 N.E.2d 355, *appeal denied*, 18 Ill.2d 627. See also 17 I.L.P. *Employment* § 21, at 386 (1956), and *Urnest v. Forged Tooth Gear Co.*, 102 Ill.App.2d 178, 188, 243 N.E.2d 596.) Consequently, plaintiff had no cause of action against Zurich for mere termination of his employment at any time, either with or without cause.

■■ The only additional allegations in Count I are conclusions that plaintiff "acquired certain rights" in defendant Zurich "including partici-

pation in the profit sharing plan and group insurance offered by such corporation." These are pure conclusions of the pleader. We are not informed regarding the provisions of any profit sharing or group insurance plan and as to whether plaintiff had vested rights in any benefits which might have accrued under these plans. No copy of any plan is appended to the complaint. (Ill. Rev. Stat. 1973, ch. 110, par. 36; *Barnes v. Peoples Gas Light & Coke Co.*, 103 Ill.App.2d 425, 428, 243 N.E.2d 855.) Thus, as above shown, these conclusory allegations are insufficient to state any cause of action flowing from plaintiff's termination. It follows that Count I was properly dismissed.

Turning now to Count III, which seeks damages from the secretary, defendant Thomas, the charge is made that she "did falsely, maliciously and intentionally" tell defendant Henry that she was forced to leave her employment because plaintiff was making "sexual advances" toward her. There is a paucity of factual allegations in this pleading. It does not inform as to whether the alleged advances were verbal or physical, where the incident or incidents took place or any of the other necessarily important surrounding circumstances. These omissions leave the reader of the pleading completely unaware of the meaning of the words in question. However, since these are the only words alleged, we must assume that they are in fact the exact words stated to defendant Henry by defendant Thomas. Undoubtedly this particular combination of words describes a great variety of human conduct including both acts and verbalizations.

■■ It follows necessarily that the so-called rule of innocent construction must be applied in this situation, (*John v. Tribune Co.*, 24 Ill.2d 437, 442, 181 N.E.2d 105, *cert. denied*, 371 U.S. 877, and numerous cases therein cited):

> "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and, declared nonactionable as a matter of law.

■■ The rule of innocent construction has been frequently and consistently applied by the courts of Illinois in analyzing allegedly defamatory material. (See *Valentine v. North American Company for Life and Health Insurance*, 60 Ill.2d 168, and numerous cases therein cited.) The rule applies to slander as well as libel with equal force, and the question of whether the language used is suspectible of an innocent construction is a question of law for the court. (See *Valentine* and cases therein cited.) An excellent example of application of this rule

appears in *Conrad v. Logan*, 4 Ill.App.3d 981, 283 N.E.2d 54, where the spoken words alleged that certain persons had taken funds, in the form of cash, from a company. This court pointed out that the words in question "indeed could have been an innocent reference * * *" to receipt of salary or other legitimate benefits from the company. 4 Ill.App.3d 981, 982.

Applying this principle to the case at bar, we are obliged to conclude that the spoken words might reasonably receive a completely innocent construction. The words might be construed to describe generally accepted social conduct such as a gesture or a wink or even the use of words with double meaning as a form of jest. In view of the complete ambiguity of the phrase as used in the complaint, we are obliged to accept and to apply an innocent construction. The allegation in the complaint that the words used by Thomas imputed that plaintiff was of unchaste and immoral character does not necessarily follow from the words themselves. This is even more readily apparent as regards the allegation that the words imputed that plaintiff was unfit, unqualified and lacking in professional integrity with reference to his employment at Zurich. None of these imputations appear valid in view of the innocent construction which the words must be given.

■■ One additional factor must be pointed out here. Count III alleges that defendant Thomas used the questioned phrase "falsely, maliciously and intentionally." These words, standing by themselves, are pure conclusions of the pleader. As above pointed out, they are meaningless and add nothing to the complaint without some further allegations of specific facts. See *Delis v. Sespsis*, 9 Ill.App.3d 217, 222.

■■ Count IV, against the employer Zurich and plaintiff's supervisor, defendant Henry, is concerned with alleged verbal replies by Henry to inquiries from two placement agencies which requested a rating of plaintiff's work performance during his employment by Zurich. On one day, in response to such an inquiry, defendant Henry said, "That is self-explanatory. He is no longer here." On the following day, to another agency, defendant Henry stated, "I would not want him working for me." The first of these responses is hardly a defamatory statement. Defendant Henry merely stated an obvious fact which plaintiff himself undoubtedly told the placement agency when he made his application for assistance in finding employment. In any event, both of these statements by defendant Henry must necessarily be classified as conditionally privileged. It has been repeatedly held in Illinois that whether a communication is "* * * 'a qualifiedly or conditionally privileged communication, or not,

[is] a question of law for the court only, not a question of fact for the jury.'" (*Myers v. Spohnholtz*, 11 Ill.App.3d 560, 567, 297 N.E.2d 183, *appeal denied*, 54 Ill.2d 593.) In *Myers*, this court cited the leading cases in Illinois which illustrate this proposition:

> "The essential elements which bear upon the existence of conditional privilege appear to be: (1) good faith by the writer; (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion and (5) publication in a proper manner and to proper parties only." 11 Ill.App.3d 560, 567.

When the court has decided that a communication is conditionally privileged, there is no liability upon the publisher, unless the publication was made with actual or express malice. This would operate to abuse the privilege and consequently to avoid it. 11 Ill.App.3d 560, 569.

■■ Analysis indicates that all the essential elements of conditional privilege are present in both of the verbal statements made by defendant Henry to representatives of the placement agencies. This appears affirmatively as a matter of law from the allegations of Count IV of plaintiff's complaint. Defendant Henry was acting in good faith in that he abstained from stating details other than the fact that plaintiff was no longer associated with Zurich and the additional statement that he personally would not want plaintiff working for him. No other or additional words or phrases are alleged. Since defendant Henry was plaintiff's supervisor, he would have a duty to respond in some manner to the inquiries made by the placement agencies. Both of Henry's statements were limited to the purpose of the inquiry. Both occasions were proper since they were necessarily made in response to two telephone calls apparently made pursuant to information originally given to the agencies by plaintiff. Finally, the publication of the remarks by Henry was limited to those persons who sought him out upon the telephone.

■■ Proceeding next to determine whether proper allegations of actual malice or abuse of the privilege appear from the complaint, Count IV alleges that Henry made the replies "with express malice, with knowledge that such replies falsely imputed that Plaintiff was an incompetent and unqualified employee, and with design and intent to injure Plaintiff * * *." Since the spoken words themselves do not suggest or even imply malice, it is necessary that these bare conclusions regarding malice and intent "be clothed with factual allegations from which the actual malice might reasonably be said to exist." *Segall v. Lindsay-Schaub Newspapers, Inc.*, 68 Ill.App.2d 209, 214, 215 N.E.2d 295.

In *Grabavoy v. Wilson*, 87 Ill.App.2d 193, 230 N.E.2d 581, the com-

plaint alleged that a defendant "maliciously issued" a certain statement or report setting forth that there were a number of liens against plaintiff's property and that this "publication was maliciously designed to represent plaintiff as a tax evader * * *." This court held that the allegations were insufficient as regards the question of actual malice because "there is no admission by the motions to dismiss of malice since there were no facts alleged from which malice could be implied or presumed." ( 87 Ill. App.2d 193, 201.) Note also the statement of this principle in a case involving interference with contractual relations in which intentional and malicious inducement of the breach is a necessary element. *Bergfeld v. Stork*, 7 Ill.App.3d 486, 491, 288 N.E.2d 15.

It follows necessarily that Count IV of plaintiff's complaint states no cause of action and was properly dismissed. The order appealed from is therefore affirmed.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.