NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

                Docket No. 79712--Agenda 12--March 1996.

     KIMBERLY BRYSON, Appellant, v. NEWS AMERICA PUBLICATIONS, INC.,

                           et al., Appellees.

                     Opinion filed October 24, 1996.

     CHIEF JUSTICE BILANDIC delivered the opinion of the court:

     The plaintiff, Kimberly Bryson, brought an action against the

defendants, News America Publications, Inc., and Lucy Logsdon. The

plaintiff's two-count complaint alleged that she was defamed by the

publication of an article entitled Bryson, which was written by

defendant Logsdon and published by defendant News America in the

March 1991 edition of Seventeen magazine.

     The complaint was originally filed in the United States

District Court for the Southern District of Illinois on August 6,

1991, but that action was dismissed for lack of diversity

jurisdiction. The plaintiff refiled her action in the circuit court

of St. Clair County in June 1992. On the defendants' motion, the

cause was transferred under the doctrine of forum non conveniens to

Gallatin County, where both the plaintiff and the defendant Logsdon

were domiciled. On September 17, 1993, the plaintiff filed an

amended complaint, which sought to add two counts seeking damages

for false light/invasion of privacy against the defendants.

     The plaintiff subsequently filed a second-amended complaint,

which was dismissed by the trial court and is the subject of this

appeal. Each count of the second-amended complaint alleged that an

article appeared in the March 1991 edition of Seventeen magazine

that referred to the plaintiff as a "slut" and implied that she was

an unchaste individual. The complaint alleged that this language

and implication were false. Counts I though IV of the second-

amended complaint sought damages for defamation. Counts V and VI

sought damages for invasion of the plaintiff's privacy by

portraying the plaintiff in a false light.

     The defendants filed a motion to dismiss counts I through IV

of the second-amended complaint, pursuant to section 2--615 of the

Code of Civil Procedure (735 ILCS 5/2--615 (West 1992)), for

failure to state a cause of action for defamation. The defendants

also moved to dismiss counts V and VI of the complaint under

section 2--619 of the Code, on the ground that these counts, which

alleged invasion of privacy, were barred by the statute of

limitations. The trial court granted the defendants' motions and

dismissed the second-amended complaint. The appellate court

affirmed. No. 5--94--0328 (unpublished order under Supreme Court

Rule 23). We granted the plaintiff's petition for leave to appeal.

155 Ill. 2d R. 315.

     The plaintiff does not appeal from that portion of the

appellate court decision which affirmed the transfer of the cause

to Gallatin County on forum non conveniens grounds. She appeals

only that part of the decision that affirmed the dismissal of her

complaint in its entirety.

                                   FACTS

     A short story entitled Bryson, written by defendant Logsdon,

was published by the defendant News America in the March 1991 issue

of Seventeen magazine as part of a group of stories entitled New

Voices in Fiction. The story, written in the style of a first-

person narrative, recounts a conflict between the unidentified

speaker and her high school classmate, Bryson. According to the

speaker, Bryson, "[a] platinum-blond, blue-eye-shadowed, faded-

blue-jeaned, black polyester-topped shriek" who lives "on the other

side of town" was "after" her. In the course of describing events

that led up to an after-school fight between Bryson and the

speaker, the speaker discusses an incident that occurred two months

earlier:

               "About two months ago Bryson was at a bonfire with

          these two guys that nobody knew. One had a tattoo, and

          they were all drinking. Lots. Who knows what guys like

          that made Bryson do. The next day she came into school

          with a black eye. Beth Harper looked at her too long, and

          Bryson slammed her up against a glass door and cracked

          her one clean in the mouth.

               Later that afternoon, as Bryson shouted down the

          hallways like always, I remembered what a slut she was

          and forgot about the sorriness I'd been holding onto for

          her."

The story continues as the speaker describes the fight that ensues

between the speaker and Bryson. A footnote at the end of the story

identifies the author, Lucy Logsdon, as a "native of southern

Illinois."

     The plaintiff's second-amended complaint, which was dismissed

by the trial court, contained six counts. Each count alleges that

the March 1991 edition of Seventeen magazine, including the article

entitled Bryson, was published to the general public. The counts

further allege that defamatory language appeared in that magazine

"in that the article referred to the [p]laintiff as a `slut' and

implied that the [p]laintiff was an `unchaste' individual." Each

count further alleges that this language and implication were false

and that each defendant permitted a false statement to appear

through "malice or actual negligence."

     Counts I and II, which attempt to state a cause of action for

defamation per se against each defendant, allege damage to the

plaintiff's reputation and seek appropriate compensatory relief, as

well as punitive damages. Counts III and IV also attempt to state

a cause of action for defamation, but allege that the damage to the

plaintiff's reputation caused her to suffer pecuniary loss in the

form of lost business opportunities and/or lost employment. Counts

V and VI, which attempt to state a cause of action for invasion of

privacy/false light against each defendant, assert that the article

placed the plaintiff in a false light in the community which would

be objectionable to a reasonable person. These counts further

alleged that the false light in which the plaintiff was placed

caused her to suffer pecuniary losses stemming from lost business

opportunities and/or employment and sought compensatory, as well as

punitive, damages.

                                 ANALYSIS

     We first consider whether the trial court properly dismissed

counts I through IV of the plaintiff's complaint, which attempt to

state a cause of action for defamation against the defendants. As

previously noted, the defendants moved to dismiss these counts

pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS

5/2--615 (West 1994)). A section 2--615 motion attacks the legal

sufficiency of a complaint. Such a motion does not raise

affirmative factual defenses but alleges only defects on the face

of the complaint. Urbaitis v. Commonwealth Edison, 143 Ill. 2d 458,

475 (1991). In ruling on a section 2--615 motion to dismiss, the

court must accept as true all well-pleaded facts in the complaint

and all reasonable inferences which can be drawn therefrom. McGrath

v. Fahey, 126 Ill. 2d 78, 90 (1988); Shaffer v. Zekman, 196 Ill.

App. 3d 727, 731 (1990). In making this determination, the court is

to interpret the allegations of the complaint in the light most

favorable to the plaintiff. McGrath v. Fahey, 126 Ill. 2d 78, 90

(1988). The question presented by a motion to dismiss a complaint

for failure to state a cause of action is whether sufficient facts

are contained in the pleadings which, if established, could entitle

the plaintiff to relief. Urbaitis v. Commonwealth Edison, 143 Ill.

2d 458, 475 (1991). A cause of action should not be dismissed on

the pleadings unless it clearly appears that no set of facts can be

proved under the pleadings which will entitle the plaintiff to

recover. Rueben H. Donnelley Corp. v. Brauer, 275 Ill. App. 3d 300

(1995).

                               I. Defamation

     With these general principles in mind, we consider the

allegations in the plaintiff's complaint. A statement is considered

defamatory if it tends to cause such harm to the reputation of

another that it lowers that person in the eyes of the community or

deters third persons from associating with her. Kolegas v. Heftel

Broadcasting Corp., 154 Ill. 2d 1, 10 (1992); Restatement (Second)

of Torts §559 (1977). A statement or publication may be defamatory

on its face. However, even a statement that is not defamatory on

its face may support a cause of action for defamation if the

plaintiff has pled extrinsic facts that demonstrate that the

statement has a defamatory meaning. See, e.g., Morrison v. Ritchie

& Co., 4 Fraser, Sess. Cas., 645, 39 Scot. L. Rep. 432 (1902)

(report that plaintiff gave birth to twins considered defamatory,

where plaintiff proved, as extrinsic fact, that some readers knew

that the plaintiff had been married only one month).

     Here, counts I and II of the plaintiff's complaint attempt to

state a cause of action for defamation per se. Only certain limited

categories of defamatory statements are deemed actionable per se.

If a defamatory statement is actionable per se, the plaintiff need

not plead or prove actual damage to her reputation to recover. Owen

v. Carr, 113 Ill. 2d 273, 277 (1986). Rather, statements that fall

within these actionable per se categories are thought to be so

obviously and materially harmful to the plaintiff that injury to

her reputation may be presumed. Owen, 113 Ill. 2d 273. If a

defamatory statement does not fall within one of the limited

categories of statements that are actionable per se, the plaintiff

must plead and prove that she sustained actual damage of a

pecuniary nature ("special damages") to recover. See Kolegas, 154

Ill. 2d 1; Heerey v. Berke, 188 Ill. App. 3d 527, 532 (1989);

Mitchell v. Peoria Journal-Star, Inc., 76 Ill. App. 2d 154, 158-60

(1966).

     The defendants raise three arguments in support of the trial

court's dismissal of the defamation per se counts. They first claim

that the statements do not fall within any of the limited

categories of statements that are considered actionable per se.

Second, they argue that the statements may not be considered

actionable per se because they are reasonably susceptible to an

innocent construction. Finally, the defendants claim that, even if

the statements may be considered actionable per se, they are

nevertheless expressions of opinion, protected under the first

amendment to the United States Constitution. U.S. Const., amend. I.

We consider each of these arguments in turn.

                        A. Defamation Per Se Counts

     We first consider whether the disputed statements may be

considered actionable per se. The plaintiff alleges that the

article is actionable per se because it referred to her as a "slut"

and implied that she was an "unchaste" individual.

     Under our common law, four categories of statements are

considered actionable per se and give rise to a cause of action for

defamation without a showing of special damages. They are: (1)

words that impute the commission of a criminal offense; (2) words

that impute infection with a loathsome communicable disease; (3)

words that impute an inability to perform or want of integrity in

the discharge of duties of office or employment; or (4) words that

prejudice a party, or impute lack of ability, in his or her trade,

profession or business. Kolegas, 154 Ill. 2d at 10-11. These common

law categories continue to exist except where changed by statute.

The Slander and Libel Act (740 ILCS 145/1 et seq. (West 1992)) has

enlarged the classifications enumerated above by providing that

false accusations of fornication and adultery are actionable as a

matter of law. See Owen v. Carr, 113 Ill. 2d 273, 277-78 (1986);

Fried v. Jacobson, 99 Ill. 2d 24, 27 (1983). Specifically, section

1 of that statute provides:

               "If any person shall falsely use, utter or publish

          words, which in their common acceptance, shall amount to

          charge any person with having been guilty of fornication

          or adultery, such words so spoken shall be deemed

          actionable, and he shall be deemed guilty of slander."

          740 ILCS 145/1 (West 1992).

     The defendants initially claim that this statute has no

application here because it applies only to words that are spoken

and not in circumstances, such as those here, where the words are

written. We reject the defendants' attempt to so limit the statute.

We note initially that the defendant's argument relies upon a

distinction between spoken and written defamation (slander and

libel) that existed at common law, but was abandoned long ago by

our courts. At common law, libel and slander were analyzed under

different sets of standards, with libel recognized as the more

serious wrong. Illinois law evolved, however, and rejected this

bifurcated approach in favor of a single set of rules for slander

and libel. Libel and slander are now treated alike and the same

rules apply to a defamatory statement regardless of whether the

statement is written or oral. Mitchell v. Peoria Journal-Star,

Inc., 76 Ill. App. 2d 154, 159-60 (1966); Harris Trust & Savings

Bank v. Phillips, 154 Ill. App. 3d 574, 579 (1987); Irving v. J.L.

Marsh, Inc., 46 Ill. App. 3d 162, 165 (1977). Given the merger of

libel and slander, we reject the defendants' claim that the statute

providing for an action where false accusations of fornication are

made is not applicable here simply because the alleged defamation

was in writing.

     Further, after considering the plaintiff's allegations, as

stated in the complaint, we find that they fall within this

statute's category of statements that are actionable per se. As

previously stated, the statute applies when persons use, utter or

publish words which amount to a charge of fornication or adultery.

Here, the plaintiff's complaint alleges that the defendants, by

using the word "slut," implied that she was "unchaste." The

complaint thus alleged, in effect, that the defendants published

words that falsely accused the plaintiff of fornication. The

defendants' statements fall within this statutorily created

category of statements that are considered actionable per se.

                       B. Innocent Construction Rule

     Even if a statement falls into one of the recognized

categories of words that are actionable per se, it will not be

found actionable per se if it is reasonably capable of an innocent

construction. The innocent construction rule requires courts to

consider a written or oral statement in context, giving the words,

and their implications, their natural and obvious meaning. If, so

construed, a statement "may reasonably be innocently interpreted or

reasonably be interpreted as referring to someone other than the

plaintiff, it cannot be actionable per se." Chapski v. Copely

Press, 92 Ill. 2d 344, 352 (1982); see also Kolegas, 154 Ill. 2d at

11. Only reasonable innocent constructions will remove an allegedly

defamatory statement from the per se category. Kolegas, 154 Ill. 2d

at 11; Costello v. Capital Cities Communications, Inc., 125 Ill. 2d

402 (1988). Whether a statement is reasonably susceptible to an

innocent interpretation is a question of law for the court to

decide. Kolegas, 154 Ill. 2d at 11; Chapski, 92 Ill. 2d at 352. The

defendants offer two arguments in support of their position that

the statement alleged to be actionable per se is reasonably

susceptible to an innocent construction. Before addressing these

two arguments, however, we briefly discuss a procedural point.

                            1. Procedural Note

     As stated, the defendants' motion to dismiss was ostensibly

brought under section 2--615. In ruling upon a 2--615 motion, a

trial court may consider only the allegations of the complaint

(Curtis Casket Co. v. D.A. Brown & Co., 259 Ill. App. 3d 800

(1994)) and may not consider other supporting material (Oravek v.

Community School District 146, 264 Ill. App. 3d 895 (1994)). Here,

however, the defendants and the trial and appellate courts

considered matters outside the complaint in addressing that portion

of the motion which sought dismissal of the defamation per se

counts under the innocent construction rule. The plaintiff's

complaint simply alleged that she was defamed by an article

entitled Bryson that appeared in Seventeen magazine, because the

article referred to her as a "slut" and implied that she was

"unchaste." The plaintiff did not attach a copy of the article to

her complaint as an exhibit, nor did she recite the article within

the complaint.

     The defendants' motion to dismiss the per se counts under the

innocent construction rule, however, was not limited to an analysis

of the allegations in the plaintiff's complaint. Instead, the

motion examined portions of the allegedly defamatory article which

were not part of the plaintiff's complaint. The defendants' motion

argued that, when the allegations of the complaint were considered

in light of the article itself, it was evident that the allegedly

defamatory statement was susceptible to an innocent construction,

and that the per se counts must therefore be dismissed. Mittleman

v. Witous, 135 Ill. 2d 220 (1989) (innocent construction rule is

applicable only to per se actions, and not to per quod actions).

Because these portions of the article did not appear in the

complaint, the defendants attached a copy of the article as an

exhibit to their motion to dismiss. The trial and appellate courts

relied upon the defamatory article, in addition to the allegations

in the plaintiff's complaint, in dismissing the per se counts under

the innocent construction rule.

     By presenting and relying upon affirmative matters outside the

pleadings, the defendants and the lower courts disregarded the

proper use of a section 2--615 motion. We therefore conclude that

the portion of the defendants' motion that seeks the dismissal of

the per se counts under the innocent construction rule cannot

properly be considered a section 2--615 motion. Rather, we will

consider that part of the motion as having been filed and decided

under section 2--619 (735 ILCS 5/2--619(a)(9) (West 1992)). Perkaus

v. Chicago Catholic High School Athletic League, 140 Ill. App. 3d

127, 134 (1986) (where plaintiff failed to attach league bylaws as

an exhibit to his complaint, defendants properly submitted the

documents in support of a section 2--619(a)(9) motion to dismiss);

Cartwright v. Garrison, 113 Ill. App. 3d 536, 540 (1983) (in a

defamation action, the question of whether the allegedly defamatory

language is rendered nonactionable per se by reason of the innocent

construction rule may properly be considered in a section 2--619

motion to dismiss); Kilbane v. Sabonjian, 38 Ill. App. 3d 172

(1976) (same); see also 4 R. Michael, Illinois Practice §41.7, at

332 (1989).

     Having addressed this procedural irregularity, we next

consider the defendants' two arguments that the per se counts were

properly dismissed because the allegedly defamatory statement is

reasonably susceptible to an innocent construction.

                    2. Innocent Construction of "Slut"

      The defendants first claim that the assertion that Bryson is

a "slut" is not actionable per se because the word "slut" may

reasonably be innocently construed as describing Bryson as a

"bully." They note that the American Heritage Dictionary includes

a number of different definitions for the word "slut," including "a

slovenly, dirty woman," "a woman of loose morals," "prostitute," "a

bold, brazen girl," or "a female dog." American Heritage Dictionary

1153 (2d Coll. ed. 1985). They argue that, because "a bold, brazen

girl" may be considered synonymous with "bully," the court must

innocently construe the word "slut."

     The defendants apparently believe that the innocent

construction rule applies whenever a word has more than one

dictionary definition, one of which is not defamatory. The innocent

construction rule does not apply, however, simply because allegedly

defamatory words are "capable" of an innocent construction. See

Chapski, 92 Ill. 2d at 351-52 (modifying the innocent construction

rule announced in John v. Tribune Co., 24 Ill. 2d 437, 442 (1962)).

In applying the innocent construction rule, courts must give the

allegedly defamatory words their natural and obvious meaning.

Chapski, 92 Ill. 2d at 351-52; 33A Ill. L. & Prac. Slander & Libel

§12 (1970). Courts must therefore interpret the allegedly

defamatory words as they appeared to have been used and according

to the idea they were intended to convey to the reasonable reader.

33A Ill. L. & Prac. Slander & Libel §12, at 25 (1970). When a

defamatory meaning was clearly intended and conveyed, this court

will not strain to interpret allegedly defamatory words in their

mildest and most inoffensive sense in order to hold them

nonlibellous under the innocent construction rule.

     Here, we need not determine whether the word "slut" always

implies unchastity or is always defamatory. When we consider the

allegedly defamatory language in context, and give the words and

implications their natural and obvious meaning, it is evident that

the word "slut" was intended to describe Bryson's sexual

proclivities. Immediately preceding the sentence in which Bryson is

called a "slut," the author describes an incident that occurred two

months earlier. The author states that Bryson appeared at a bonfire

with "two guys that nobody knew. One had a tattoo, and they were

all drinking. Lots. Who knows what guys like that made Bryson do."

The sexual implication underlying the use of "slut" is intensified

with the commentary "who knows what guys like that made Bryson do."

The defendants suggest that this latter statement did not

necessarily have sexual undertones, since the author could have

been implying that the two men made Bryson engage in conduct of a

nonsexual nature, such as shop-lifting. The defendant basically

asks this court to construe the words used, not in the plain and

popular sense in which they are naturally understood, but in their

best possible sense.

     The innocent construction rule, however, does not require

courts to strain to find an unnatural but possibly innocent meaning

for words where the defamatory meaning is far more reasonable.

Chapski, 92 Ill. 2d at 350-51. Nor does it require this court to

espouse a naïveté unwarranted under the circumstances. Reading the

words in the context presented, and giving the words their "natural

and obvious" meaning, it is obvious that the word "slut" was used

to describe Bryson's sexual proclivities. See Tonsmeire v.

Tonsmeire, 281 Ala. 102, 106, 199 So. 2d 645, 648 (1967) (statement

that the plaintiff "had two affairs" could not be innocently

construed as referring to platonic associations; statement charged

the plaintiff with unchastity and was libelous per se); Jordan v.

Lewis, 20 A.D.2d 773, 774, 247 N.Y.S.2d 650, 653 (1964) (stating

that the plaintiff "slept with his secretary" is not susceptible of

an innocent construction and, as ordinarily used, charges the

plaintiff with sexual promiscuity). Accordingly, we reject the

defendant's contention that the defamatory language at issue must

be innocently construed as a matter of law.

     The defendants finally note that our appellate court has held

that it is not defamatory per se to call a woman a slut. Roby v.

Murphy, 27 Ill. App. 394 (1888). We note initially that Roby is an

1888 appellate court decision. Appellate court decisions issued

prior to 1935 had no binding authority. Chicago Title & Trust Co.

v. Vance, 175 Ill. App. 3d 600, 606 (1988). We also conclude that

Roby is not persuasive for another reason as well.

     Roby was decided more than 100 years ago. It is evident that

neither the law of defamation nor our use of language has remained

stagnant for the last century. Terms that had innocuous or only

nondefamatory meanings in 1888 may be considered defamatory today.

See, e.g., Moricoli v. Schwartz, 46 Ill. App. 3d 481 (1977)

(rejecting the defendant's claim that the term "fag" should be

innocently construed, because the dictionary definitions for that

term included "cigarette" and "to become weary"; stating that the

plaintiff "is a fag" amounted to a charge that the plaintiff was

homosexual); Manale v. City of New Orleans, 673 F.2d 122 (5th Cir.

1982) (referring to the plaintiff, a fellow police officer, as "a

little fruit" and "gay" falsely charged the plaintiff with

homosexuality and was defamatory per se); Tonsmeire v. Tonsmeire,

281 Ala. 102, 199 So. 2d 645 (1967) ("affair" is commonly

understood to mean unchastity rather than a platonic association).

     At the time Roby was decided, Webster's dictionary defined the

term "slut" as "an untidy woman," "a slattern" or "a female dog,"

and stated that the term was "the same as bitch.' " Roby, 27 Ill.

App. at 398. Apparently, when Roby was decided, none of the

dictionary definitions of "slut" implied sexual promiscuity.

Moreover, the Roby court found that, even in its "common

acceptance," the term "slut" did not amount to a charge of

unchastity. Roby, 27 Ill. App. at 398.

     We cannot simply assume that the term "slut" means the same

thing today as it did a century ago. Many modern dictionaries

include the definitions of the term "slut" cited in Roby, but add

new definitions that imply sexual promiscuity. See, e.g., Webster's

New World Dictionary (2d Coll. ed. 1975) ("a sexually immoral

woman"); American Heritage Dictionary 1153 (2d Coll. ed. 1985)

("[a] woman of loose morals" "prostitute"). Moreover, in the

present age, the term "slut" is commonly used and understood to

refer to sexual promiscuity. See Smith v. Atkins, 622 So. 2d 795

(La. App. 1993) (law professor called a female student a "slut" in

class; appellate court found that term was libelous per se). Thus,

for this additional reason, we find Roby to be of no value here.

                  3. Identity of Bryson as the Plaintiff?

     The defendants next argue that the innocent construction rule

must apply in this case because the article may reasonably be

construed as referring to someone other than the plaintiff. The

defendants note that the complaint does not allege any facts to

demonstrate that third persons would reasonably conclude that the

character "Bryson" is the plaintiff, Kimberly Bryson. The

defendants argue that, under Illinois law, where an allegedly

defamatory statement does not mention the plaintiff by name, the

plaintiff must plead extrinsic facts to demonstrate that third

persons believed that the libelous statement referred to the

plaintiff. Barry Harlem Corp. v. Kraff, 273 Ill. App. 3d 388

(1995); Homerin v. Mid-Illinois Newspapers, 245 Ill. App. 3d 402

(1993); Moore v. Streit, 181 Ill. App. 3d 587, 597-98 (1989); Voris

v. Street & Smith Publications, 330 Ill. App. 409 (1947).

      We agree with the general proposition that, where a libelous

article does not name the plaintiff, it should appear on the face

of the complaint that persons other than the plaintiff and the

defendant must have reasonably understood that the article was

about the plaintiff and that the allegedly libelous expression

related to her. See 33A Ill. L. & Prac. Slander & Libel §§93, 13,

at 97, 28-29 (1970); Coffey v. MacKay, 2 Ill. App. 3d 802, 807

(1972). Neither this principle nor the cases upon which the

defendants rely, however, apply here.

     The article at issue did, of course, use the plaintiff's last

name. The name "Bryson" is not so common that we must find, as a

matter of law, that no reasonable person would believe that the

article was about the plaintiff. The cases that the defendants cite

all involve circumstances in which the allegedly libelous article

or statement did not use the plaintiff's name. In Voris, the

defamatory article referred only to a person named "Snapper

Charlie." Voris, 330 Ill. App. 409. Homerin involved a political

cartoon that supposedly depicted the plaintiff's likeness, but did

not identify him by name. Homerin, 245 Ill. App. 3d 402. Barry

Harlem Corp. likewise involved an article that did not mention the

plaintiff by name. Barry Harlem Corp., 273 Ill. App. 3d 388. Under

the present facts, we reject the defendants' claim that the story

must be innocently construed as referring to someone other than the

plaintiff.

     The defendants also argue that the article may be construed as

not referring to the plaintiff simply because the story is labeled

"fiction" and, therefore, does not purport to describe any real

person. We are not persuaded by this contention. In her complaint,

plaintiff Bryson claims that she is the character "Bryson" depicted

in the defamatory story. The fact that the author used the

plaintiff's actual name makes it reasonable that third persons

would interpret the story as referring to the plaintiff, despite

the fictional label. In addition, the setting of the story, the

events described therein, and the identification of the writer as

a native of southern Illinois all lead to a reasonable conclusion

that third persons familiar with both the plaintiff and the

defendant would understand the story as referring to the plaintiff.

     In this regard, we note that, when addressing the defendant's

section 2--619 motion to dismiss the per se counts under the

innocent construction rule, the trial court should have considered

the plaintiff's responses to interrogatories, which were contained

in the record. Section 2--619(c) provides that, if the party

opposing a section 2--619 motion to dismiss presents "affidavits or

other proof *** establishing facts obviating the grounds of

defect," the court may consider the same in granting or denying the

motion. 735 ILCS 5/2--619(c) (West 1992). An interrogatory answer

is considered equivalent to an affidavit for purposes of a section

2--619 motion to dismiss. See 134 Ill. 2d Rs. 213(f), 212(a)(4).

The facts stated in the plaintiff's answers to the defendant's

interrogatories were therefore before the trial court for its

consideration when it ruled on the defendant's motion to dismiss.

Sierens v. Clausen, 60 Ill. 2d 585, 588 (1975). One of the

interrogatories propounded by the defendants asked the plaintiff to

identify why she believed that she was the character described in

the story. The plaintiff's response identified more than 25 alleged

similarities between herself and the physical attributes, locations

and events attributed to the character "Bryson" in the story. Had

the trial court considered this interrogatory answer, it certainly

would have rejected the defendants' claim that the article must be

innocently construed as referring to someone other than the

plaintiff. Under the circumstances, we conclude that the plaintiff

should be allowed the opportunity to prove that, despite the

fictional label, the character "Bryson" bears such a close

resemblance to the plaintiff that reasonable persons would

understand that the character was actually intended to portray the

plaintiff. Whether the article was actually understood by third

parties to be about the plaintiff is, of course, a question of fact

for the jury. Chapski, 92 Ill. 2d at 352.

                            C. First Amendment

     The defendants finally claim that, even if the statements may

be considered actionable per se and are not susceptible to an

innocent construction, they are nevertheless expressions of

opinion, protected under the first amendment to the United States

Constitution. U.S. Const., amend. I.

     Prior to 1990, this court and others perceived a fundamental

distinction between statements of fact and statements of opinion

for first amendment purposes. Statements of opinion were held to be

protected by the first amendment and not actionable in a defamation

action. Owen v. Carr, 113 Ill. 2d 273 (1986); Mittleman v. Witous,

135 Ill. 2d 220 (1989). This rule was grounded primarily on dictum

contained in Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 41

L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3006-07 (1974): "Under the

First Amendment there is no such thing as a false idea. However

pernicious an opinion may seem, we depend for its correction not on

the conscience of judges and juries but on the competition of other

ideas."

     Recently, however, the United States Supreme Court reexamined

the law of defamation within the context of the first amendment and

rejected what it called "the creation of an artificial dichotomy

between `opinion' and fact." Milkovich v. Lorain Journal Co., 497

U.S. 1, 19, 111 L. Ed. 2d 1, 18, 110 S. Ct. 2695, 2706 (1990). The

Court explained that the dictum in Gertz had been interpreted too

broadly and was not intended to create a "wholesale defamation

exemption for anything that might be labeled `opinion.' "

Milkovich, 497 U.S. at 18, 111 L. Ed. 2d at 17, 110 S. Ct. at 2705.

The Court held that there is no separate first amendment privilege

for statements of opinion and that a false assertion of fact can be

libelous even though couched in terms of an opinion. Milkovich, 497

U.S. at 18, 111 L. Ed. 2d at 17-18, 110 S. Ct. at 2706 (simply

couching the statement "Jones is a liar" in terms of opinion--"In

my opinion Jones is a liar"--does not dispel the factual

implications contained in the statement).

     Thus, the test to determine whether a defamatory statement is

constitutionally protected is a restrictive one. Under Milkovich,

a statement is constitutionally protected under the first amendment

only if it cannot be "reasonably interpreted as stating actual

facts." Milkovich, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct.

at 2706; see, e.g., Hustler Magazine v. Falwell, 485 U.S. 46, 50,

57, 99 L. Ed. 2d 41, 48, 53, 108 S. Ct. 876, 879, 883 (1988)

(parody); Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 284-

86, 41 L. Ed. 2d 745, 761-63, 94 S. Ct. 2770, 2781-82 (1974)

(hyperbole and imaginative expression); Greenbelt Cooperative

Publishing Ass'n v. Bresler, 398 U.S. 6, 13-14, 26 L. Ed. 2d 6, 14-

15, 90 S. Ct. 1537, 1541-42 (1970) (hyperbole and imaginative

expression).

     In applying this test we first consider whether a reasonable

fact finder could conclude that the allegedly defamatory statement,

i.e., that Bryson was a "slut," was an assertion of fact.

Milkovich, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706.

We answer this question in the affirmative. The clear impact of the

statement was that Bryson was, in fact, sexually promiscuous. This

was not the sort of loose, figurative or hyperbolic language that

would negate the impression that the writer was seriously

maintaining that the character depicted in the story was unchaste.

The assertion is sufficiently factual to be susceptible to being

proven true or false. Milkovich, 497 U.S. at 20, 111 L. Ed. 2d at

19, 110 S. Ct. at 2706. Whether the statement was actually true or

false is a question of fact for the jury. We simply hold, as a

matter of law, that the allegation of sexual promiscuity in this

case contains a provably false factual assertion. Thus, we do not

find that the allegedly defamatory statement here was

constitutionally protected under the first amendment. Milkovich,

497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706.

     The defendants argue, however, that the defamatory statement

cannot be reasonably interpreted as stating actual facts about the

plaintiff because the story was clearly labeled "fiction." The test

is not whether the story is or is not characterized as "fiction,"

or "humor," but whether the charged portions, in context, could be

reasonably understood as describing actual facts about the

plaintiff or actual events in which she participated. Kolegas, 154

Ill. 2d at 16. The cases upon which the defendant relies in this

regard are easily distinguished from the present case. For

instance, in Flip Side, Inc. v. Chicago Tribune Co., 206 Ill. App.

3d 641 (1991), the plaintiff, Flip Side Corporation, claimed that

it was defamed by events described in a Dick Tracy comic strip. The

appellate court reviewed the comic series and found that the

persons and events described therein were so fantastic that no

reasonable person would believe that they stated actual facts or

described actual events. The court noted that the characters' names

(i.e., A.M. and F.M. Stereo, Themesong, Flipside, Victor Promomo,

and Sam Catchem) and the events described (e.g., murders

perpetrated by means of a black box that emits high frequency sound

waves that destroy the inner ear, causing convulsions and death by

heart attack) were so fanciful that no one would interpret the

comic strip as describing actual people and events. Flip Side,

Inc., 206 Ill. App. 3d at 655. The court noted that the fact that

the episode appeared only on pages of the newspaper devoted solely

to comic strips fortified its conclusion that the characters and

events were not intended to depict actual persons and events.

     Here, although the story Bryson is labeled as fiction, the

story itself is not so fanciful or ridiculous that no reasonable

person would interpret it as describing actual persons or events.

Compare Hustler Magazine v. Falwell, 485 U.S. 46, 50, 57, 99 L. Ed.

2d 41, 48, 53, 108 S. Ct. 878, 879, 883 (1988) (jury concluded that

Hustler ad parody could not reasonably be understood as describing

actual facts about Falwell or actual events in which he

participated). On the contrary, the story here portrays realistic

characters responding in a realistic manner to realistic events. A

reasonable reader could logically conclude that the author of the

story had drawn upon her own experiences as a teenager when writing

the story. Under the circumstances, we must reject the defendants'

claim that the story cannot reasonably be interpreted as stating

actual facts simply because it is labeled fiction.

     In sum, we hold that the allegations in the plaintiff's

complaint are sufficient to state a cause of action for defamation

per se. The statement in the article that Bryson was a "slut" falls

within the class of statements deemed actionable per se under

section 1 of the Libel and Slander Act, because it amounted to a

charge of fornication. Moreover, we are not persuaded that there is

a reasonable innocent construction for the statement that would

remove it from the actionable per se category. Finally, we conclude

that the statement may reasonably be interpreted as stating an

actual fact and therefore falls outside the protection of the first

amendment. Accordingly, we reverse the trial court's dismissal of

counts I and II of the complaint.

                          II. Defamation Per Quod

     We next consider whether the trial court properly dismissed

counts III and IV of the plaintiff's complaint, which attempt to

state a cause of action for defamation per quod. The allegations in

counts III and IV of the complaint are identical to those found in

counts I and II, except that the plaintiff has alleged that she

sustained pecuniary loss ("special damages") as a result of the

defendant's publication of the allegedly defamatory statements. The

defendants argue that the trial court properly dismissed these per

quod counts because they failed to allege any extrinsic facts to

show that the statements are defamatory in character. We disagree.

     A cause of action for defamation per quod may be brought in

two circumstances. First, a per quod claim is appropriate where the

defamatory character of the statement is not apparent on its face,

and resort to extrinsic circumstances is necessary to demonstrate

its injurious meaning. To pursue a per quod action in such

circumstances, a plaintiff must plead and prove extrinsic facts to

explain the defamatory meaning of the statement. Kolegas v. Heftel

Broadcasting Corp., 154 Ill. 2d 1 (1992); Mittleman v. Witous, 135

Ill. 2d 220, 233 (1989).

     A per quod action is also appropriate, however, where a

statement is defamatory on its face, but does not fall within one

of the limited categories of statements that are actionable per se.

See Mitchell v. Peoria Journal-Star, Inc., 76 Ill. App. 2d 154,

158-60 (1966). In such per quod actions, the plaintiff need not

plead extrinsic facts, because the defamatory character of the

statement is apparent on its face and resort to additional facts to

discern its defamatory meaning is unnecessary. The action is one

for defamation per quod simply because the statement does not fall

into one of the actionable per se categories. In other words, the

statement is defamatory on its face, but damage to the plaintiff's

reputation will not be presumed. See Mitchell v. Peoria Journal-

Star, Inc., 76 Ill. App. 2d 154, 158-60 (1966). As with any

defamation per quod action, the plaintiff must plead and prove

special damages to recover.

     Counts III and IV of the plaintiff's complaint attempt to

assert this second type of per quod action. The plaintiff claims

that the statement that Bryson is a "slut" is defamatory on its

face. Thus, the fact that the plaintiff failed to plead extrinsic

facts to explain the defamatory character of the statement is not

an adequate or appropriate basis for dismissing counts III and IV.

The trial court improperly dismissed them on that ground.

     The defendants alternatively argue that counts III and IV were

properly dismissed because the plaintiff failed to adequately

allege special damages. In any defamation per quod action, the

plaintiff must plead and prove actual damage to her reputation and

pecuniary loss resulting from the defamatory statement ("special

damages") to recover. As stated above, we have found that the

statement that Bryson is a "slut" falls within the class of

statements deemed actionable per se under the Libel and Slander

Act, because it amounted to a charge of fornication. Because the

defamatory statement is actionable per se, the plaintiff need not

plead or prove special damages to establish a cause of action for

defamation. Counts III and IV, which simply restate the allegations

found in counts I and II of the complaint, are therefore redundant

and unnecessary. We therefore affirm the dismissal of those counts,

with the modification that the dismissal is without prejudice.

                          III. False Light Counts

     We next consider whether counts V and VI of the plaintiff's

complaint, which attempt to state a cause of action for false

light, were properly dismissed. As previously noted, the defendants

filed a section 2--619 motion to dismiss those counts on the ground

that they were barred by the applicable statute of limitation. The

trial court granted the defendants' motion, relying upon the

appellate court decision in Starnes v. International Harvester Co.,

184 Ill. App. 3d 199 (1989). The appellate court affirmed the

dismissal of counts V and VI, quoting Starnes, 184 Ill. App. 3d at

206, for the proposition that "[a]n amendment asserting new causes

of action will not be permitted after the statute of limitations

has run."

     The limitations period for invasion of privacy claims and for

defamation claims is one year after the cause of action accrues.

735 ILCS 5/13--201 (West 1992). Here, the cause of action accrued

in March 1991, when the article Bryson was published in Seventeen

magazine. As previously noted, the plaintiff filed her original

complaint in the United States district court on August 6, 1991.

That action was dismissed for lack of diversity jurisdiction in

June 1992.

     The plaintiff refiled her action in the circuit court of St.

Clair County in June 1992, pursuant to section 13--217 of the

Limitations Act (735 ILCS 5/13--217 (West 1992)). That section

provides:

               "In the actions specified in Article XIII of this

          Act or any other act or contract where the time for

          commencing an action is limited, if *** the action is

          dismissed by a United States District Court for lack of

          jurisdiction, then, whether or not the time limitation

          for bringing such action expires during the pendency of

          such action, the plaintiff, his or her heirs, executors

          or administrators may commence a new action within one

          year or within the remaining period of limitation,

          whichever is greater, after *** the action is dismissed

          by a United States District Court for lack of

          jurisdiction." 735 ILCS 5/13--217 (West 1992).

Section 13--217 gave the plaintiff an absolute right to refile the

same cause of action in the circuit court after that action was

dismissed in the federal district court for lack of diversity

jurisdiction. See Gonzalez v. Thorek Hospital & Medical Center, 143

Ill. 2d 28, 30-31 (1991); Flores v. Dugan, 91 Ill. 2d 108 (1982).

As stated, the plaintiff filed a complaint in the circuit court of

St. Clair immediately after the federal action was dismissed.

     In September 1993, the plaintiff filed an amended complaint,

which added two counts for false light/invasion of privacy. The

plaintiff argues that the amendment, which was filed after the

limitations period expired, relates back to the original complaint,

which was timely filed in the federal court. Under section 2--

616(b) of the Code of Civil Procedure (735 ILCS 5/2--616(b) (West

1992)), a cause of action alleged in an amended complaint, filed

after the expiration of the limitations period, will relate back to

the filing of the original complaint if two requirements are met:

(1) the original pleading was timely filed and (2) the original and

amended pleadings indicate that the cause of action asserted in the

amended pleading grew out of the same transaction or occurrence set

up in the original pleading. Wolf v. Meister-Neiberg, Inc., 143

Ill. 2d 44 (1991); Zeh v. Wheeler, 111 Ill. 2d 266 (1986). The

lower courts apparently found that neither of these requirements

was met in the instant case. We disagree and find that both

requirements for invoking section 2--616(b) are met here.

     The defendants concede in their brief that the original

pleading was timely filed in the federal court within the one-year

limitation period. The defendants do not argue that section 2--

616(b) does not apply simply because the original action was

dismissed by the federal court and refiled in the circuit court

pursuant to section 13--217. We would reject such an argument even

if the defendants had raised it. Frankenthal v. Grand Trunk Western

R.R. Co., 120 Ill. App. 3d 409, 417 (1983). Both section 13--217

and section 2--616(b) are remedial in nature and should be

liberally construed in favor of hearing the plaintiff's claim.

Steinberg v. Dunseth, 276 Ill. App. 3d 1038 (1995); Frankenthal v.

Grand Trunk Western R.R. Co., 120 Ill. App. 3d 409, 417 (1983).

Both provisions were enacted to facilitate the disposition of

litigation upon the merits and to protect plaintiffs from losing a

cause of action because of a technical default unrelated to the

merits. See Zeh v. Wheeler, 111 Ill. 2d 266 (1986); Gendek v.

Jehangir, 119 Ill. 2d 338, 343 (1988); Wolf v. Meister-Neiberg,

Inc., 143 Ill. 2d 44 (1991); American National Bank & Trust Co. v.

Dozoryst, 256 Ill. App. 3d 674 (1993). Where the original action

was timely filed, the plaintiff should not be penalized simply for

availing herself of the provisions of sections 13--217. We

therefore conclude that the first requirement for invoking section

2--616(b) is met here.

     The second requirement is likewise satisfied. The cause of

action for false light asserted in counts V and VI of the second-

amended complaint clearly "grew out of the same transaction or

occurrence set up in the original pleading." 735 ILCS 5/2--616(b)

(1992). The false light counts are based upon the same publication

that formed the basis of the defamation claims raised in the

original complaint. Counts V and VI allege that the Bryson article

"placed the Plaintiff in a false light in the public eye in that it

said that she was a `slut' and implied that she was of `unchaste

moral character.' " The counts further allege that the false light

mentioned "is something that is objectionable to a reasonable

person under the circumstances."

     The defendants were thus clearly made aware, within the

limitations period, of the relevant facts underlying the false

light claim and were afforded sufficient opportunity to investigate

the circumstances upon which the plaintiff was attempting to impose

liability. Wolf v. Meister-Neiberg, Inc., 143 Ill. 2d 44 (1991);

Zeh v. Wheeler, 111 Ill. 2d 266 (1986). In fact, the original

complaint supplied the defendant with all of the information

necessary to prepare a defense to the subsequently asserted false

light claim. Where the original complaint put the defendants on

notice of the disputed transaction and occurrence, and the

amendment arises out of that same transaction or occurrence, the

purposes of section 2--616(b) are fulfilled. Because the defendants

had notice of litigation arising out of the same facts and

circumstances within the limitations period, the rationale for

extending the limitations period pursuant to section 13--217 is

likewise fulfilled. Gonzalez v. Thorek Hospital & Medical Center,

143 Ill. 2d 28, 36-37 (1991). We hold that the amendment to the

pleadings relates back to the original filing pursuant to section

2--616(b), even though the original pleading was dismissed and

refiled in accordance with section 13--217.

     The lower courts determined that the amendment was barred by

the statute of limitations simply because it alleged a new cause of

action. This conclusion was in error. In Zeh v. Wheeler, 111 Ill.

2d 266 (1986), this court explained that the test for whether an

amended complaint relates back under section 2--616(b) to the

original pleading for statute of limitations purposes does not

depend on whether the amended complaint asserts the "same cause of

action" pleaded in the original complaint. Instead, the focus is on

the identity of the transaction or occurrence. Zeh, 111 Ill. 2d at

272-73. Under the "same transaction or occurrence" standard, the

focus is on the facts and occurrence alleged in the original

complaint, not the name of the cause of action or legal theory used

to support the claim for damages. Thus, those decisions which

impose a "same cause of action" or "substantially similar cause of

action" requirement on amended complaints are inconsistent with

Zeh. See, e.g., Starnes, 184 Ill. App. 3d at 206 ("An amendment

asserting new causes of action will not be permitted after the

statute of limitations has run"); Beam v. Erven, 133 Ill. App. 2d

193, 199 (1971) (same). The trial and appellate courts erroneously

relied upon those decisions in dismissing counts V and VI of the

plaintiff's complaint. See Weber v. Cueto, 253 Ill. App. 3d 509,

515-16 (1995). Accordingly, we hold that counts V and VI of the

second-amended complaint relate back to the original complaint and

that the trial court erred in granting the defendants' section 2--

619 motion to dismiss those counts. The defendants raise additional

challenges to the sufficiency of counts V and VI which were not

raised in the trial court. In the interest of fairness to the

plaintiff, we conclude that those challenges should be raised and

addressed in the trial court on remand.

                           IV. Punitive Damages

     The plaintiff finally argues that her punitive damage claims

were improperly dismissed. Counts I, II, V and VI of the

plaintiff's complaint seek punitive damages. In support of a

punitive damage award, the plaintiff's complaint alleges that the

defendants published a defamatory statement or permitted a false

statement to appear through malice or actual negligence.

     In Gertz v. Robert Welch, Inc., 418 U.S. 323, 41 L. Ed. 2d

789, 94 S. Ct. 2997 (1974), the United States Supreme Court held

that the first amendment prohibits awards of presumed and punitive

damages for false and defamatory statements unless the plaintiff

shows actual malice. The Supreme Court subsequently limited the

scope of Gertz, however, in Dun & Bradstreet, Inc. v. Greenmoss

Builders, Inc., 472 U.S. 749, 761, 86 L. Ed. 2d 593, 604, 105 S.

Ct. 2939, 2946 (1985), where the Court held that the first

amendment of the federal Constitution does not bar states from

awarding private individuals presumed and punitive damages in a

defamation action upon a showing of less that actual malice where

the statements in question do not involve matters of public

concern. See also Philadelphia Newspapers, Inc. v. Hepps, 475 U.S.

767, 774-75, 89 L. Ed. 2d 783, 791, 106 S. Ct. 1558, 1562-63

(1986); Owens v. CBS, Inc., 173 Ill. App. 3d 977, 996 (1988);

Beasley v. St. Mary's Hospital, 200 Ill. App. 3d 1024 (1994).

     This court has not yet considered whether, as a matter of

state law, punitive damages may be awarded in a defamation action

absent a showing of actual malice. We decline to address the

question in this appeal, however, because neither party has raised

or briefed it. Rather, both the plaintiff and the defendants assume

that punitive damages may be awarded in this case only upon a

showing of actual malice. They disagree only with respect to

whether the plaintiff's complaint adequately alleges actual malice.

     The trial and appellate courts dismissed the punitive damage

claims, finding that the complaint failed to set forth sufficient

factual allegations from which actual malice may be said to exist.

We disagree. A complaint must be liberally construed, to the end

that controversies may be quickly and finally determined according

to the substantive rights of the parties. 735 ILCS 5/1--106 (West

1992). Accordingly, it has been held that a plaintiff need not

plead facts with precision when the information needed to plead

those facts is within the knowledge and control of the defendant

rather than the plaintiff. Stap v. Chicago Aces Tennis Team, Inc.,

63 Ill. App. 3d 23 (1978); Coffey v. MacKay, 2 Ill. App. 3d 802

(1972); 3 R. Michael, Illinois Practice §23.4, at 310 (1989). This

rule assists plaintiffs who may be unable to discover the

information needed to draft a detailed complaint before bringing an

action. Holton v. Resurrection Hospital, 88 Ill. App. 3d 655

(1980). This rule also recognizes that, where the defendants have

most of the pertinent information in their possession, they do not

have to rely primarily on the facts stated in the complaint to

formulate an answer and prepare for trial, since they can easily

determine the specific details for themselves. Holton v.

Resurrection Hospital, 88 Ill. App. 3d 655 (1980). Accordingly, in

such cases, the plaintiff can state the material facts in the

complaint with less specificity than would normally be required.

Holton v. Resurrection Hospital, 88 Ill. App. 3d 655 (1980).

     In the instant case, the facts and information necessary to

support the claim of actual malice are within the knowledge and

control of the defendants. What motivated defendant Logsdon to

assert that the plaintiff was a "slut" and what precautions

defendant Seventeen magazine undertook before publishing that

assertion are details that the defendants can easily discern for

themselves without relying on the plaintiff's complaint. The

plaintiff cannot know or allege with particularity facts that are

solely within the minds of the defendants. Although the allegation

of malice here was less than ideal, the information needed to

support or overcome that allegation is within the defendants'

control. The defendants cannot realistically claim that the lack of

factual detail hinders their ability to prepare an answer or a

defense for trial. Accordingly, we hold that the facts alleged in

the plaintiff's complaint are sufficiently specific to meet the

requirements of law in the circumstances of this case. See Duhl v.

Nash Realty Inc., 102 Ill. App. 3d 483 (1981) (where complaint

alleged fraudulent misrepresentation by a real estate broker,

allegation that defendant acted intentionally with reckless

disregard for the truth was sufficient); Sherman v. Field Clinic,

74 Ill. App. 3d 21 (1979). Under the circumstances, we conclude

that the plaintiff's punitive damage claims were improperly

dismissed.

                                CONCLUSION

     For the reasons stated, the judgments of the trial and

appellate courts are reversed in part and affirmed in part. Those

portions of the appellate court's judgment that affirmed the trial

court's dismissal of counts I, II, V and VI of the plaintiff's

second-amended complaint and the dismissal of the claims for

punitive damages are reversed and those counts are reinstated.

Those portions of the appellate court's judgment that affirmed the

dismissal of counts III and IV of the complaint are affirmed, with

the modification that the dismissal is without prejudice. This

cause is remanded to the trial court for further proceedings

consistent with the views expressed herein.

Appellate court judgment affirmed in part

                                                    and reversed in part;

                                  circuit court judgment affirmed in part

                                                    and reversed in part;

                                                          cause remanded.

                                                                         

                                                                         

     JUSTICE McMORROW, dissenting:

     This is an important case in the field of defamation and libel

law. I believe that the majority's decision turns defamation law on

its head. Today's decision has serious ramifications with respect

to our first amendment right of free speech, for it may pave the

way for frivolous lawsuits whenever something caustic is written,

even in a fictional story. I do not believe that is the purpose of

our defamation law.

     The plaintiff in this cause is not a public figure or well

known for any other reason. She does not allege or claim to be

known or publicly recognizable for any reason. She is a domiciliary

of Gallatin County, located in southern Illinois. Without even

attaching a copy of the allegedly defamatory article to her

complaint, the plaintiff claims that she was defamed by a fictional

article in Seventeen magazine, which is published and widely

distributed nationally. She alleged in her complaint that the

fictional article referred to a character named Bryson (which is

not plaintiff's full name) in the article as being a slut. She

claims that the fictitious character in the article was intended to

portray her, and that she was defamed because the article referred

to the fictitious Bryson as a slut.

     Nowhere in the complaint does plaintiff establish her identity

as the fictitious Bryson. It is only in her answer to

interrogatories that plaintiff claims 25 similarities between the

fictitious Bryson and herself. None of the similarities are unique

or conclusive. For example, the author of the story describes the

Bryson character as a "Brass Blonde" and a "Platinum Blonde."

According to plaintiff, "her mother owned a beauty salon" and she

and "her friend, Susie Patton[,] were always changing their hair

color." Plaintiff also refers to one incident in the story wherein

another character, Anita, is grounded for refusing to tell her

father what she had done with his Willie Nelson tapes. Plaintiff

claims that she had a friend named Anita, and that Anita's brother

was named Nelson. In my opinion, these are not similarities which

establish the identity of plaintiff as the Bryson in the fictional

story.

     Plaintiff did not allege any special damages in her complaint.

She must, under the law, allege special damages in order to

successfully prosecute her claim for defamation per quod. Schaffer

v. Zekman, 196 Ill. App. 3d 727 (1990). Indeed, plaintiff's answers

to interrogatories reveal that she had not been employed for four

years prior to the publication of the article. Further, plaintiff's

answers did not indicate that she was refused employment after the

publication of the article.

     I disagree, then, with the majority's decision to reinstate

plaintiff's claim for libel per se. In my view, the majority fails

to properly consider the full impact of the innocent construction

rule under the circumstances of this case. Contrary to the

majority, I do not believe that the author's use of the word "slut"

in describing one of her characters is the equivalent of charging

plaintiff with "having been guilty of fornication." 740 ILCS 145/1

(West 1992). In addition, I also believe that the majority errs in

relying on facts not found within the article itself in order to

reinstate plaintiff's claim for libel per se. For these reasons, I

respectfully but strongly dissent.

                                     I

     The innocent construction rule provides that an allegedly

defamatory statement is not actionable per se if it is reasonably

capable of an innocent construction. Kolegas v. Heftel Broadcasting

Corp., 154 Ill. 2d 1, 11 (1992). This rule "requires courts to

consider a written or oral statement in context, giving the words

and implications therefrom their natural and obvious meaning."

Kolegas, 154 Ill. 2d at 11. The focus of the rule is on whether the

statement, when so considered, "may reasonably be innocently

interpreted." Chapski v. Copley Press, 92 Ill. 2d 344, 352 (1982).

That determination is a question of law for the court to decide.

Chapski, 92 Ill. 2d at 352.

     In this case, the majority holds that the word "slut" is not

susceptible to an innocent construction. Slip op. at 9-12. The

majority reaches this holding by noting the pejorative evolution of

the word "slut." In today's parlance, the majority posits, the word

"slut" connotes sexual promiscuity. Therefore, when viewed in

context, "it is evident that the word `slut' was intended to

describe [plaintiff's] sexual proclivities." Slip op. at 10. From

this reasoning, the majority concludes that the article in question

comes within the purview of the Illinois Slander and Libel Act. 740

ILCS 145/1 (West 1992) (making charges of fornication actionable).

     In my opinion, the majority's holding not only fails to give

due regard to the various meanings of the word "slut," but also

fails to fully appreciate the context in which it was expressed. I

address each of these points in turn.

     As a general rule, it is not actionable to call a woman a

"slut" unless the word is used in such a manner as to impute

whoredom. See 53 C.J.S. Libel & Slander §26 (1977) (cases cited

therein); 13 A.L.R.3d 1286 (1967) (cases cited therein). This rule

recognizes that the word itself does not always impute a breach of

chastity, but carries with it such nonactionable connotations as

brazen or shameless. Indeed, as defendants point out, and the

majority concedes, the American Heritage Dictionary contains

several definitions of the word "slut," such as a "slovenly, dirty

woman," "a woman of loose morals," a "prostitute," "a bold, brazen

girl," or "a female dog." Slip op. at 9. See also Webster's Third

New International Dictionary 2148 (1986). Consequently, because the

word has many different meanings, most of which are not defamatory

per se, context is crucial; for as noted above, if a word "may

reasonably be innocently interpreted," it is not actionable per se.

Chapski v. Copley Press, 92 Ill. 2d 344, 352 (1982).

     We then, as the court, must consider how the word "slut" was

used in the context of this article in order to determine whether

the author intended to characterize the fictitious Bryson as a

fornicator, or merely as an overbearing high school bully. In my

view, this can only be done by considering the story in the context

in which the word was used, something which the majority does not

do.

     In the story, the Bryson character is introduced as a

"platinum-blond, blue-eye-shadowed, faded-blue-jeaned, black-

polyester-topped shriek" who is once again "after" the unnamed

narrator. Both characters are in high school, although their mutual

dislike has spanned several years. As the narrator relates, "We've

never been friends. But she's tracked my life since fifth grade,

when I climbed on the school bus whose new route added my country

stop to her section of town. Two grades ahead, she spent the next

four years pelting spitballs at me until she got her driver's

license."

     Returning to the present, the narrator relates that during one

particular week Bryson had been slamming lockers, cutting classes

and dropping water balloons. The narrator, bemoaning the fact that

"[i]t was only a matter of time before her attention swung my way,"

proceeds to describe the following scene, which takes place in the

high school restroom in the presence of another girl, Sue Barton:

               "I heard a voice behind me like I've heard a million

          times, in a high-pitched, brassy voice, `Well look who's

          here.' Bryson had just walked in. Without turning around

          I knew she was talking straight to me. `You usually got

          cigarettes.' ***

               `Not today.'

               `Not today?' Bryson looked at Sue ... and didn't say

          anything. Good. If she wasn't saying anything, she wasn't

          looking for a scene. I put my comb in my bag and edged

          for the door.

               `Hey, I was talking to you.' She placed one arm on

          the wall's peeling green paint. *** Then, instead of

          doing what I'd always done--what I've learned was the

          only thing to do--stand there, quiet, looking at my feet

          until her attention went somewhere else, I walked

          straight up to her arm, put my hands together in a sort

          of hammer, and knocked it down. *** Then she smiled and

          said, `So meet me by the baseball field after school

          today then.' "

     Later that morning, the narrator telephoned her friend Anita

who was sick at home. Anita cautioned, "You can't fight her. She

broke Beth Harper's two front teeth." Then, the narrator states:

               "About two months ago Bryson was at a bonfire with

          these two guys that nobody knew. One had a tatoo, and

          they were all drinking. Lots. Who knows what guys like

          that made Bryson do. The next day she came into school

          with a black eye. Beth Harper looked at her too long, and

          Bryson slammed her up against a glass door and cracked

          her one clean in the mouth.

               Later that afternoon, as Bryson shouted down the

          hallways like always, I remembered what a slut she was

          and forgot about the sorriness I'd been holding onto for

          her."

The story eventually culminates with the fight between Bryson and

the narrator.

     In this case, the majority submits that the "sexual

implication underlying the use of `slut' is intensified with the

commentary `who knows what guys like that made Bryson do.' " Slip

op. at 10. I disagree. In my opinion, not only can the word "slut"

as used here be construed in the nondefamatory sense connoting

brazenness, it is the only way it can be construed. There is

nothing lascivious or licentious in the word "slut" when used to

describe the fictional Bryson's less than decorous or mannerly

behavior. Indeed, Bryson's sexual drive is neither the focal point

of the story, nor a digression.

     The appellate court in this case correctly observed that the

word "slut" was merely an opinion uttered "by a fictional character

about another fictional character" in a story that "creat[ed] a

small snapshot of time, one moment in the lives of two fictional

adolescents where one calls the other a name because she `shouted

down the hallways like always.' " No. 5--94--0328, slip op. at 7

(unpublished order under Supreme Court Rule 23). Like the appellate

court, I believe that "[a]lthough it may be true that this word has

a coarse effect on the ear, its use does not create the prurient

image plaintiff avers." No. 5--94--0328, slip op. at 7. On the

contrary, the word "slut" in this context cannot be viewed as

anything more than a literary embellishment intended to convey the

brazen nature of a school yard bully. It is not, as the majority

suggests, the functional equivalent of charging plaintiff with

having engaged in fornication. Thus, if the author of the article

did not intend to portray the fictitious Bryson as a fornicator,

then she could not intend to characterize the plaintiff as one

either. As a result, plaintiff cannot claim that the article in

question is libelous per se.

     In light of the above, I also wish to emphasize that I believe

that courts should not espouse a "naïveté" when applying the

innocent construction rule. Slip op. at 10-11. However, courts

should not be overly sensitive whenever a vulgar or depraved word

is used. This is particularly true where the word is found in a

work of fiction, where authors typically use colorful language to

describe characters and events.

     Because I believe that the word "slut" as used in this context

is clearly capable of a nondefamatory construction, and because I

also find that our defamation law is ill-served by the majority's

decision, I cannot join in the majority's reinstatement of

plaintiff's claim for libel per se.

                                    II

     Defendants also contend that the statement in question cannot

be defamatory per se because it does not mention the plaintiff by

name, and therefore extrinsic facts must be pled to demonstrate

that third persons reasonably understood that the statement

referred to plaintiff. They add that the article was a work of

fiction which did not purport to describe any actual person. I

agree with defendants' arguments.

     In rejecting these contentions, the majority points out that

plaintiff "identified more than 25 alleged similarities between

herself and the physical attributes, locations and events

attributed to the character `Bryson' in the story." Slip op. at 14.

The majority looks to these extrinsic, alleged similarities in

order to bolster the connection between plaintiff and the fictional

character. However, by relying on these alleged similarities, which

are not found within the four corners of the allegedly libelous

article, the majority contravenes established case law in this

area.

     If additional facts are required to show the identity of the

allegedly defamed person, then the statement cannot be said to be

defamatory on its face. Our appellate court has repeatedly held

that " `the injurious character of the statement *** cannot be

considered so obvious as to justify dispensing with proof of actual

damages' [i.e., the statement cannot be libelous per se] where

additional explanation is required to establish a person's

identification with the publication." Schaffer v. Zekman, 196 Ill.

App. 3d 727, 732-33 (1990) (holding that news broadcast which fell

within several of the historical categories for per se defamation

was not defamatory per se where plaintiff's identity was not shown

on its face), quoting Moore v. Streit, 181 Ill. App. 3d 587, 598

(1989). See also Barry Harlem Corp. v. Kraff, 273 Ill. App. 3d 388

(1995); Colucci v. Chicago Crime Comm'n, 31 Ill. App. 3d 802

(1975).

     In this case, I find it ironic and improper that the majority

relies on the very extrinsic facts (i.e., the alleged similarities

between plaintiff and the fictitious Bryson referred to in the

article) that remove this case from per se defamation in order to

reinstate plaintiff's claim for libel per se. Plaintiff cannot, on

the one hand, rely on numerous facts not found within the article

itself to show that she was the person intended to be defamed, and

then, on the other hand, claim to have been libeled on the face of

the article. That position, which the majority ultimately approves,

is not only logically inconsistent, it is also legally unsound. For

this additional reason, I submit that it is improper to reinstate

plaintiff's claim for libel per se.

                                    III

     Finally, the position I espouse in this dissent regarding

plaintiff's claim for libel per se requires me to address the

propriety of plaintiff's claim for libel per quod. As with any

action for defamation per quod, the plaintiff here must plead

special damages in order to recover. Schaffer v. Zekman, 196 Ill.

App. 3d 727 (1990). A review of plaintiff's complaint in the case

at bar reveals that the allegations of special damages are

factually insufficient and cannot withstand a motion to dismiss.

Plaintiff summarily alleges that she suffered "pecuniary damages in

that she lost business opportunities and/or lost employment as a

result of the damage to her reputation." She does not, however,

allege either the nature of the purported lost business

opportunities or the circumstances surrounding the loss of her

employment. Our courts have consistently viewed such general,

boiler-plate allegations as insufficient to state a cause of action

for defamation per quod. Taradash v. Adelet/Scott-Fetzer Co., 260

Ill. App. 3d 313, 318 (1993); see also Heerey v. Berke, 188 Ill.

App. 3d 527, 532-33 (1989).

                                    IV

     For the foregoing reasons, I would affirm the order of the

circuit court dismissing with prejudice those counts in the

complaint seeking relief for libel per se and libel per quod. I

respectfully dissent.